**UNITED STATES v. FLAXER.**

No. 1756–52.

United States District Court,
District of Columbia.

June 5, 1953.

---

Leo Rover, U. S. Atty., and William Hitz, Asst. U. S. Atty., Washington, D. C., for plaintiff.

David Rein, Washington, D. C., and Vito Marcantonio, New York City, for defendant.

MATTHEWS, District Judge.

Two motions are before the court. One seeks a judgment of acquittal under Rule 29(b) of the Federal Rules of Criminal

Procedure, 18 U.S.C.A. The other, by way of alternative relief, seeks a new trial.

The defendant, president of a union known as the United Public Workers, was summoned by a congressional subcommittee to appear on October 5, 1951 to testify and to produce certain records relative to the subject matters under consideration by the subcommittee.[1] He appeared but failed to comply with the command of the subpoena to bring union records showing the names and addresses of members (1) employed by the United States Government and (2) employed by any state, county or municipal government within the United States.

In its report to the Senate the subcommittee indicated that the defendant's illegal refusal to comply with the subpoena duces tecum deprived the subcommittee of information pertinent to the subject matter committed to it for investigation and "places this witness in contempt of the United States Senate."[2] The Senate directed certification of the subcommittee's report to the United States Attorney for the District of Columbia "to the end that said Abram Flaxer may be proceeded against in the manner and form provided by law."[3]

Thereafter the defendant was charged in a two count indictment with contempt[4] in that he failed on October 5, 1951 to produce the specified union records and had thereby willfully made default. The jury returned a verdict of guilty as to both counts.

The motion for a judgment of acquittal is based on two main contentions. The first is that although the subpoena directed the production on October 5, 1951 of the records, the defendant appeared on that day without them and was given ten days additional time to produce them by the one member of the subcommittee who was present at the hearing, and hence that no default occurred on October 5, 1951.

The court finds no merit in the contention that the subcommittee granted an extension of time within which to comply with the subpoena. The defendant was clearly informed that he was to produce the records according to the terms of the subpoena, as is shown by the following:

"Mr. Arens. Mr. Chairman, I respectfully ask of the chairman that the witness be ordered to produce for this record, in compliance with the subpoena duces tecum served upon him, the record of the United Public Workers showing the names and addresses of all members of the United Public Workers who are employed by the Federal Government of the United States of America, and records showing the names and addresses of all members who are employed by any State, county, or municipal government located anywhere in the United States of America. * * *

"Senator Watkins. Do you stand on your statement that you refuse to produce those? Mr. Flaxer. I didn't say I refused * * *

"Mr. Arens. But you do have the information? Mr. Flaxer. In a general sense, I think I have the information.

"Mr. Arens. And you have not complied with the command of the subpoena to produce that information.

1. Senate Resolution 366, 81st Congress, second session, created this subcommittee known as the subcommittee on Internal Security of the Committee on the Judiciary of the United States Senate to investigate the extent, nature and effects of subversive activities in this country by persons under the domination of the foreign government or organizations controlling the world communist movement or any other movement seeking to overthrow the Government of the United States by force and violence, and kindred matters.
2. Report No. 1336, 82d Congress, 2d session.

3. S.Res. 295, 82d Congress, 2d session.
4. Violation of Title 2, § 192, U.S.C.A. providing as follows: "Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default * * * shall be deemed guilty of a misdemeanor * * *."

Mr. Flaxer. I think it is an improper command, sir.

"Senator Watkins. That is the reason you have refused to bring them here today, because you think it is improper? Mr. Flaxer. That is the reason I haven't got them.

"Senator Watkins. That is the main reason. You are directed by the committee to produce those records according to the terms of the subpoena. * * *"

It appears to the court that the offense of contempt was complete at this point. The defendant had been duly summoned to appear before the subcommittee and to bring with him the specified records and the offense of contempt matured when he willfully failed to comply on the return date of the subpoena. U. S. v. Bryan, 339 U.S. 323, 330, 341, 70 S.Ct. 724, 94 L.Ed. 884. The defendant often iterated his view that the subcommittee had no right to the union membership lists but consistently his view was rejected by the subcommittee. The following statement in Bart v. U. S., 91 U.S.App.D.C. 370, 203 F.2d 45 at page 49 is applicable here:

"A witness does not insulate himself from contempt by asserting a reason for a refusal to answer, or by objecting to the question, or by querying its propriety. When he deliberately and intentionally refuses to answer upon a stated ground, he assumes the risk that the ground is unsound."

The subcommittee's subsequent command to defendant to produce the information sought within ten days was a new order, the validity of which need not now be considered.[5] Had the defendant respected the new order he probably would not have been cited for contempt for failure to comply with the subpoena on October 5, 1951 albeit such failure on that day made out a case of willful default.

The other main contention of the defendant concerns a quorum. The setting in which the quorum query arises will first be given. After the defendant was sworn as a witness he said: "I notice that we do not have a quorum of the committee here." When told by Senator Watkins that "one present makes a quorum" the defendant responded: "I am not sure about that. I would like to have the record show that I object to the fact that I think there is no quorum."

The subcommittee had as members seven senators. The resolution creating the sub-

---

5. The new order came about October 5, 1951— *after* the refusal indicated in the quoted portion of the hearing. The following took place concerning the new order:

"Mr. Arens. How long would it take you, Mr. Flaxer, to prepare the information which is called for in this subpoena? Mr. Flaxer. I don't know.

"Mr. Arens. Could it be done in a week? Mr. Flaxer. I imagine it could be done in a week.

"Mr. Arens. I respectfully suggest to the chairman that the witness be ordered to produce the information and transmit it to the subcommittee in 10 days' time.

"Senator Watkins. Since you have made the reply that it could be done in a week, that will be the order of the committee, that you submit that information as requested by counsel for the committee within 10 days from this date. The record will show that you of course have been given that notice and that requirement has been made, and the order has been made. Mr. Flaxer. I would like to suggest to the committee to reconsider that. * * *

"Senator Watkins. Whatever your argument is, that is the order now, and, as I understand it, you refuse to do so on the ground you set forth. I want to make the record clear. Mr. Flaxer. I haven't got them. I don't feel capable of producing them.

"Senator Watkins. You said you could do it within a week. Mr. Flaxer. No; that was not the question he asked. He asked could the list be compiled within a week and I said it could.

"Mr. Arens. The information is available to you? Mr. Flaxer. Yes.

"Mr. Arens. But you have declined to produce it; is that correct? Mr. Flaxer. I haven't produced them.

"Mr. Arens. Will you produce it pursuant to the order of the chairman of this session within 10 days from today?

"Mr. Flaxer. I will have to take that under consideration.

"Senator Watkins. That is the order, and of course we will have to take what-

672

committee declares that a quorum for the transaction of business is a majority of its members except that a lesser number to be fixed by the subcommittee shall constitute a quorum for the purpose of administering oaths and taking testimony.[6] That lesser number was fixed by the subcommittee for the purpose stated to consist of one Senator of the subcommittee.[7]

The defendant takes the position that only a subcommittee consisting of at least a majority of its members possesses the power to rule on his objections to the production of the records named in the subpoena; that therefore the purported adverse ruling on them by the one-man subcommittee was a nullity, and that since the objections were "never passed on in any way" by a subcommittee validly constituted for that purpose a judgment of acquittal should be entered.

Before the one-man subcommittee the defendant did not state that he would produce the records if a majority of the members of the subcommittee were present to rule on his objections. It is perfectly plain from his testimony at the hearing that he would not have complied with the subpoena no matter how many members of the subcommittee had been present. There he grounded his objections to producing the documents on "the rights of unions to the privacy of their membership records" and he insisted that the command of the subpoena "constitutes a wholesale invasion of such privacy and 'the right to be let alone' which is protected by the Fourth Amendment" and is "in conflict with the basic union tradition of this country now incorporated into Federal law".

 The defendant did not have the right to withhold the records. The command for their production was proper in view of the subject matter entrusted to the subcommittee for investigation. It is com-

mon knowledge that communists contemplate acquiring a powerful leverage on the population by the undercover capture of control of strategic labor unions meanwhile concealing the communist tie from the union membership. In other words the grounds stated at the hearing by the defendant for his refusal to produce the records are unsound and at the trial he completely abandoned them.

 It is true as already indicated that the defendant mentioned the matter of a quorum at the hearing. That was at its start and previous to any mention of the records. What the defendant said did not apprise the subcommittee that he deemed essential a quorum of a majority of its members to hear and pass upon his objections to the subpoena. Apparently the defendant did not consider the alleged quorum defect of any importance for he definitely stated and relied on other grounds for his refusal to produce the records, the grounds not being tenable. Moreover, the defendant did not bring on October 5 the membership lists subpoenaed, and therefore, he put himself in a position where he could not comply in any event. In the opinion of the court the defense of lack of a quorum (if there was such a lack) is not available to the defendant under the circumstances of this case. U. S. v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884.

It is ironic that of defendant's two main contentions for a judgment of acquittal one is grounded on the power, the other on the lack of power, of the one-man subcommittee to perform a function other than taking testimony. On the one hand defendant asserts that the one-man subcommittee had power to alter the terms of the subpoena by enlarging the return date. On the other hand he states the subcommittee did not have the power to pass on objections to that subpoena.

ever steps are necessary if at the end of the time you have not produced them."

6. Sec. 2. S.Res. 366, 81st Congress, second session, reading as follows: "A majority of the members of the committee, or duly authorized subcommittee thereof, shall constitute a quorum for the transaction of business, except that a

lesser number, to be fixed by the committee, or by such subcommittee, shall constitute a quorum for the purpose of administering oaths and taking sworn testimony."

7. Minutes of meeting of subcommittee on January 18, 1951.

In support of the motion for a new trial the defendant says that in instructing the jury it was error for the court to state the subjects committed to the subcommittee for investigation. Specifically, the defendant objects to the mention of communist activities. There is no substance to this contention. In numerous inquiries of the jury on the voir dire the counsel for defendant indicated that the case touched on communism.

The motions are denied.