UNITED STATES of America,
Plaintiff,

v.

Bernhard DEUTCH, Defendant.

Cr. No. 1152–54.

United States District Court
District of Columbia.

Dec. 12, 1956.

George H. Goodrich, Washington, D. C., and Henry W. Sawyer, III, Philadelphia, Pa., for the motion.

Oliver Gasch, U. S. Atty. and William Hitz, Asst. U. S. Atty., Washington, D. C., opposed.

HOLTZOFF, District Judge.

This is a trial by the court of an indictment for contempt of Congress, a trial by jury having been waived by the defendant.

The defendant is charged with unlawfully refusing to answer questions which were propounded to him as a witness by the Committee on Un-American Activities of the House of Representatives. There are five questions involved in this indictment, which will be mentioned subsequently. The defendant took the position that he had moral scruples against answering the questions because they involved the activities of other persons and that he was practically being asked to inform on others as to their illegal or improper activities.

This case involves some of the fundamental principles as to the investigative power of the Congress. Under

the Constitution of the United States the Federal Government is a government of limited powers. The Congress, being the legislative branch of the Federal Government, is also clothed with limited legislative powers. In order, however, to carry its legislative powers into effect successfully, it has always been held that Congress has the power to secure information concerning matters in respect to which it has the authority to legislate. In fact, it would seem that Congress must secure information in order to legislate intelligently. Beyond that, the Congress has the right to secure information in order to determine whether or not to legislate on a particular subject matter on which it is within its constitutional powers to act.

This Court had occasion to say in United States v. Bryan, D.C., 72 F. Supp. 58, 61, that: "It is elementary that for use in connection with the exercise of its power to legislate and to appropriate funds, the Congress has the authority to secure information. * * * The Congress * * * has the right to compel the disclosure of factual material. * * * For this purpose, the Congress may issue subpoenas to require the attendance of witnesses and to exact the production of records and documents." And again the Court stated in that case that, "The collection of facts may cover a wide field. Obviously in order to act in an enlightened manner, it may be necessary and desirable for the Congress to become acquainted not only with the precise topic involved in prospective legislation, but also with all matters that may have an indirect bearing on the subject." A number of examples are enumerated in that opinion.

■■ To be sure there is a very definite limitation that must not be overlooked on the power of Congress to investigate. The power to carry on investigations and secure information may be used only in connection with the exercise of its legislative function, and with the appropriation of funds. The information sought to be secured by a con-

gressional committee must be germane to the legislative or the appropriating function. For example, Congress may not compel the divulgence of information for the sole purpose of ascertaining whether a crime has been committed, as a basis for a criminal prosecution. That is a matter for the judiciary and for the prosecuting officers of the government. On the other hand, if some information is desired for use in connection with the exercise of the legislative or appropriating power, the mere fact that the information may be used for some other purpose as well does not deprive the Congress of the right to elicit it.

■ In determining whether any question was properly asked of a witness before a congressional committee, three matters must be considered. First, was the general subject matter within the legislative power of the Congress? Second, was the inquiry within the power delegated by the Congress to this specific congressional committee? And, third, were the particular questions pertinent to the inquiry which the committee was pursuing?

■ As to the first question, the subject of investigation of Communism is obviously within the legislative function of the Congress, as this Court held in United States v. Sacher, D.C., 139 F. Supp. 855, 858. In that case this Court called attention to the fact that the Congress has legislated on the subject of Communistic activities and other activities tending to overthrow the Government by force and violence, and that the legality of the creation of the Committee on Un-American Activities of the House of Representatives has been often contested but the contest has always been resolved in favor of the Committee.

■ The next question is whether the particular subject matter was within the jurisdiction of this Committee. That question must likewise be answered in the affirmative. The Committee was investigating the infiltration of Communism into educational and labor fields.

This general subject was obviously within its jurisdiction.

The third question to be determined is the pertinency of the specific questions asked of the witness to the subject matter of the inquiry, and in this connection we must consider the questions.

■ The first count charges the defendant with refusing unlawfully to answer the following question:

"The Committee was advised that a witness by the name of Ross Richardson has stated that you acted as liaison between a Communist party group on the campus and a member of the faculty at Cornell, and that you knew the name of the member of that faculty who was a member of the Communist Party. Will you tell us who that member of the faculty was?"

Obviously, this question is pertinent to the general subject matter under scrutiny, on its very face. The Committee was investigating the infiltration of Communism into education, and obviously it had the right to ascertain the names of university and college teachers who were members of the Communist Party, if any there were. The defendant declined to answer and was directed to answer.

■ Count two involves a question as to the source of a hundred-dollar contribution for the benefit of the Communist Party. The defendant refused to answer and was thereafter directed to answer. Obviously this question is pertinent on its face.

For the moment I shall omit Count three.

■ Count four inquired of the defendant whether he was acquainted with one Homer Owen.

The testimony at this trial indicates that Homer Owen had been a student at Cornell in an industrial relations course, and that students in that course did temporary summer work in various labor unions, some of which were Communist controlled. The Committee desired to know what, if any, connection there was between students in this course and the Communist-controlled unions. The question whether the defendant was acquainted with Homer Owen is obviously a preliminary question that might have led to a line of inquiry within the scope of the topic just mentioned. Consequently, it was a pertinent question.

■ The mere fact that the Committee had obtained information from Homer Owen, and that Homer Owen had testified in full before the committee, does not deprive the committee of the power to ask other witnesses concerning the activities of Homer Owen. A congressional committee in the course of its investigations has a right to obtain cumulative testimony. It has a right to call several witnesses to the same matter in order to check the accuracy of the information that it is obtaining. It should be also remembered that the rules of evidence applicable to jury trials in the courts do not limit the powers of congressional committees and have no place in hearings before congressional committees.

■ Count five called upon the defendant to identify the student who approached him and invited him to join a Communist unit. This question obviously is pertinent on its face.

■ This leads me to return to Count number three. Count number three is in a different class. In Count number three the defendant was asked to state the places where certain Communist meetings were held. The defendant gave an answer with a double aspect. He in effect said at first he did not remember and, second, if he did remember he would not answer anyway. Thus, his statement that he would refuse to answer was more or less a surplusage. He may not be punished for contempt of Congress merely for stating that he does not remember.

In the light of these considerations the Court finds the defendant guilty on Counts one, two, four and five, and not guilty on count three.