FLAXER *v.* UNITED STATES.

No. 60.   Argued November 19, 1958.—Decided December 15, 1958.

*David Rein* argued the cause for petitioner.   With him on the brief was *Joseph Forer.*

*William Hitz* argued the cause for the United States. On the brief were *Solicitor General Rankin, Acting Assistant Attorney General Yeagley* and *Philip R. Monahan.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner was found guilty, after jury trial, of failure to produce, pursuant to a subpoena *duces tecum* issued by a Subcommittee of a Senate Committee,[1] records of a

---

[1] Subcommittee on Internal Security of the Senate Committee on the Judiciary.   The Senate voted to certify the committee report of

union[2] showing the names and addresses of members of that organization who were employed either by the United States or by any state, county, or municipal government in the country.[3] The District Court denied a motion for acquittal or new trial. 112 F. Supp. 669. The Court of Appeals, sitting *en banc,* affirmed by a divided vote. 98 U. S. App. D. C. 324, 235 F. 2d 821. On petition for a writ of certiorari we vacated and remanded for consideration in light of *Watkins* v. *United States,* 354 U. S. 178, an intervening decision. 354 U. S. 929. The Court of Appeals, sitting *en banc,* once more affirmed by a divided vote. 103 U. S. App. D. C. 319, 258 F. 2d 413. We again granted certiorari. 357 U. S. 904.

The Senate Committee on the Judiciary or a duly authorized Subcommittee was authorized[4] to investigate the administration, operation, and enforcement of the Internal Security Act of 1950.[5] The Committee created a Subcommittee which adopted a resolution to the effect that a single member would constitute a quorum for the purpose of taking testimony.

---

the failure to produce the records to the United States Attorney for the purpose of initiating a contempt proceeding. S. Res. 295, 82d Cong., 2d Sess.; 98 Cong. Rec. 2500.

[2] United Public Workers of America.

[3] 2 U. S. C. § 192 provides:

"Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months."

[4] S. Res. 366, 81st Cong., 2d Sess.; 96 Cong. Rec. 16872.

[5] 64 Stat. 987.

Petitioner was head of the union under investigation. The Chairman issued a subpoena *duces tecum* directing him to produce, *inter alia,* the names and addresses of the union members mentioned above. Petitioner appeared before Senator Watkins, sitting as the Subcommittee, and produced some of the records of the union; but he failed to produce the membership lists. He made several objections to disclosure of them, maintaining that they were protected by a right of privacy. He did not maintain that the lists were unavailable to him. Indeed, he responded to further interrogation, giving the approximate number of members and indicating that about 5 percent were in the employ of the Federal Government, the balance being in state, county, and municipal governments. He also named the federal agencies where the bulk of the 5 percent were employed. But he persisted in his refusal to produce the lists. At this point in the interrogation Senator Watkins said: "You are directed by the committee to produce those records according to the terms of the subpena."

Petitioner continued to state his objections.

Committee counsel asked petitioner how long it would take him to prepare the lists. Petitioner finally said, "I imagine it could be done in a week."

Committee counsel then said:

> "I respectfully suggest to the chairman that the witness be ordered to produce the information and transmit it to the subcommittee in 10 days' time."

Senator Watkins replied:

> "Since you have made the reply that it could be done in a week, that will be the order of the committee, that you submit that information as requested by counsel for the committee within 10 days from

this date. The record will show that you of course have been given that notice and that requirement has been made, and the order has been made."

Petitioner continued to object to any order of production. Then the colloquy continued as follows:

"Senator WATKINS. Whatever your argument is, that is the order now, and, as I understand it, you refuse to do so on the ground you set forth. I want to make the record clear.

"Mr. FLAXER. I haven't got them. I don't feel capable of producing them.

"Senator WATKINS. You said you could do it within a week.

"Mr. FLAXER. No; that was not the question he asked. He asked could the list be compiled within a week and I said it could.

"Mr. ARENS. The information is available to you?

"Mr. FLAXER. Yes.

"Mr. ARENS. But you have declined to produce it; is that correct?

"Mr. FLAXER. I haven't produced them.

"Mr. ARENS. Will you produce it pursuant to the order of the chairman of this session within 10 days from today?

"Mr. FLAXER. I will have to take that under consideration.

"Senator WATKINS. That is the order, and of course we will have to take whatever steps are necessary if at the end of the time you have not produced them."

These events transpired on October 5, 1951. That was the return date of the subpoena *duces tecum.* And each of the two counts of the indictment named October 5, 1951, as the date of petitioner's willful default.

We read the record as showing no default on that date. As we read the colloquy, petitioner, though adamant in his position, was given 10 days from October 5, 1951, to deliver the lists. It does not appear whether at the end of that 10-day period any additional steps were taken against him. Yet, for all we know, a witness who was adamant and defiant on October 5 might be meek and submissive on October 15.

We stated in *Watkins* v. *United States,* 354 U. S. 178, 208, in reference to prosecutions for contempt under this Act that "the courts must accord to the defendants every right which is guaranteed to defendants in all other criminal cases." One of these guarantees is proof beyond a reasonable doubt that the refusal of the witness was deliberate and intentional, as *Quinn* v. *United States,* 349 U. S. 155, 165, holds. In the *Quinn* case the witness was "never confronted with a clear-cut choice between compliance and noncompliance, between answering the question and risking prosecution for contempt." *Id.,* at 166. The rulings were so imprecise as to leave the witness "to guess whether or not the committee had accepted his objection." *Ibid.*

In the present case, the position of the Committee was clear in one respect: it was plain it wanted the membership lists. But, to say the least, there was ambiguity in its ruling on the time of performance. The witness could well conclude, we think, that he had 10 days more to consider the matter, 10 days to face the alternative of compliance as against contempt. Certainly we cannot say that petitioner could tell with a reasonable degree of certainty that the Committee demanded the lists this very day, not 10 days hence.

We repeat what we said in the *Quinn* case:

"Giving a witness a fair apprisal of the committee's ruling on an objection recognizes the legitimate in-

terests of both the witness and the committee. Just as the witness need not use any particular form of words to present his objection, so also the committee is not required to resort to any fixed verbal formula to indicate its disposition of the objection. So long as the witness is not forced to guess the committee's ruling, he has no cause to complain. And adherence to this traditional practice can neither inflict hardship upon the committee nor abridge the proper scope of legislative investigation." 349 U. S., at 170.

On this record the District Court should have directed an acquittal.

*Reversed.*