Bernhard DEUTCH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 13694.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 15, 1960.

Decided June 18, 1960.

Mr. Henry W. Sawyer, III, of the bar of the Supreme Court of the United States, Philadelphia, Pa., pro hac vice, by special leave of court, with whom Mr. George Herbert Goodrich, Washington, D. C., was on the brief, for appellant.

Miss Doris Spangenburg, Asst. U. S. Atty., for appellee.

Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher, Lewis Carroll, William Hitz, and Harold D. Rhynedance, Jr., Asst. U. S. Attys., were on the brief for appellee.

Mr. John D. Lane, Asst. U. S. Atty., also entered an appearance for appellee.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

This is a contempt of Congress case arising from a hearing held by a subcommittee of the House Committee on Un-American Activities. Appellant

Deutch was indicted for contempt for his refusal to answer certain questions.[1] He was tried in the District Court by a judge sitting alone (jury having been waived), convicted and sentenced on four of the five counts of the indictment.[2] On appeal, appellant urges that the subject matter under inquiry and the pertinency to that subject matter of the questions set forth in the indictment were not proved by the Government beyond a reasonable doubt to have appeared with indisputable clarity at the time of the subcommittee hearing. Appellant also attacks the legislative purpose of the investigation and the power of the committee to engage in exposure. He also objects to the admission of certain documentary evidence at the trial. Lastly, he relies on his rights under the First Amendment.

In July 1953, the committee began hearings in Albany, New York, in connection with a general investigation of communist activities in that area.[3] At these hearings, there was testimony to the effect that during the period 1947–1953 a communist cell was active on the campus of Cornell University and that students enrolled at the university were accepting positions with communist-controlled labor unions. The committee also received information that appellant had participated in this communist activity and that he might know the name of a professor (theretofore unknown) of the university who had obtained funds for the communist cell. The committee determined to call appellant to inquire into these activities relating to both communism in education and communist infiltration into labor unions.

Thereafter, the committee interrupted the Albany hearings and announced that further hearings were postponed until a later date. The hearings were resumed in Albany in April 1954. At the commencement of the reopened hearing (April 7, 1954), the Chairman of the subcommittee made the following statements:

"This committee is charged by the Congress of the United States with the responsibility of investigating the extent, character, and objects of un-American propaganda activities in the United States, the diffusion within the United States of subversive and un-American propaganda that is instigated from foreign countries, or of a domestic origin, and attacks the principles of the form of government as guaranteed by our Constitution and all other questions in relation thereto that will aid Congress in any necessary remedial legislation.

"The Committee on Un-American Activities will resume this morning the investigation of Communist Par-

---

1. The questions listed in the indictment (the numbering being that of the counts) were these:

1. The committee was advised that a witness by the name of Ross Richardson has stated that you acted as liaison between a Communist Party group on the campus and a member of the faculty at Cornell, and that you knew the name of the member of that faculty, who was a member of the Communist Party. Will you tell us who that member of the faculty was?

2. Will you tell the committee, please, the source of that $100 contribution, if it was made?

3. Where were these meetings held?

4. Were you acquainted with Homer Owen?

5. The witness is directed to give the name of the person by whom he was approached.

2. The circumstances under which the appeals in this case and seven other contempt of Congress cases came on for hearing in this court appear in footnote 2 of the opinion in Gojack v. United States, 108 U.S.App.D.C. ——, 280 F.2d 678.

3. The committee had also, on February 25, 1953, begun a series of hearings on communist infiltration into education, and on that day the Chairman of the committee made a full and complete statement of the purposes of the investigation. The material portions of the opening statement of the Chairman appear in note 31 of the Supreme Court's opinion in Barenblatt v. United States, 360 U.S. 109, 130–131, 79 S.Ct. 1081, 3 L.Ed. 2d 1115.

ty activities within the capital area. This is a continuation of the open hearings which were conducted in Albany between July 13 and 16, 1953. The investigation has been extended into adjacent areas, from which witnesses are also expected to be heard.

"A public announcement was made in January that hearings would be resumed here at a much earlier date, but due to my desire not to interfere with sessions of the Federal court, and for reasons beyond the committee's control, it became necessary to postpone them until this time.

\* \* \* \* \* \*

"Other testimony taken at the 1953 Albany hearings related to the efforts of the Communist Party to infiltrate industry and other segments of society in the capital area. Testimony now to be heard is expected to supplement that formerly given on this subject and as indicated will extend into adjacent areas.

"I want to emphasize what I have stated hitherto, namely that the committee is not concerned with the political beliefs or opinions of any witness. It is concerned only with facts showing the extent, character, and objects of Communist Party activities within the areas from which the witnesses are subpenaed.

"I desire also to make it clear that this committee is not interested in any dispute between management and labor or with internal disputes within the field of labor. However, the committee considers that it has a legislative mandate to investigate the extent, character, and objects of Communist Party activities whereever evidence of its existence is found, and this it proposes to do.

"This committee is not investigating labor unions but it is investigating communism within the field of labor where it has substantial evidence that it exists. Such an in-vestigation is particularly pertinent at this time when the Committee on Un-American Activities is engaged in the study of H.R. 7487 which has been referred by the Speaker of the House to this committee.

"In keeping with the long-standing policy of this committee, any individuals or organizations, whose names are mentioned during the course of the hearing in such a manner as to adversely affect them, shall have an opportunity to appear before the committee for the purpose of making a denial or offering an explanation of such adverse information."

One of the witnesses called on April 7, 1954, testified as to communist activities at Cornell University from 1947 to 1951. On April 8, 1954, another witness [4] testified that he [the witness] became a member of the communist group at Cornell and was assigned to the Labor Youth League, "which is a sort of training for future communist members." This witness gave testimony about communist activities at the university and stated that Deutch had acted as a contact man, in 1952 and 1953, between the Communist Party and a member of the faculty whose name was unknown to the witness. He also testified that appellant had received a contribution for the Communist Party from an unknown source. For this reason, appellant was subpoenaed to appear before the committee in Albany on April 9, 1954.

As his counsel protested the shortness of time, appellant was granted a continuance to April 12, when, accompanied by his counsel, he appeared before the committee in executive session in Washington, D. C. He was at that time 25 years of age, a graduate student attending the University of Pennsylvania, having previously studied at Cornell. He was represented at the hearing by the same counsel who represented him in the District Court and in this court, and

---

4. This witness joined the Communist Party with the full knowledge of and at the request of the Federal Bureau of Investigation.

who had secured the continuance for him. Appellant asked for and was granted frequent opportunities to confer with his counsel. Never once did he indicate unawareness of the purpose of the hearing, or doubt as to the pertinency of the questions. At the outset of the hearing, he was informed and questioned by the committee counsel, Mr. Tavener, as follows:

"Mr. Deutch, during hearings at Albany last week, the committee heard testimony regarding the existence of a Communist Party group or cell operating among undergraduates at Cornell University, among certain graduates at Cornell and in the city of Ithaca.

"In connection with that testimony, the committee was informed that you were a member of one or more of those groups. If so, I would like to ask you certain matters relating to your activity there.

"Were you a member of a group of the Communist Party at Cornell?"

After conferring with his counsel, Mr. Sawyer, Deutch responded under protest that he had been a member of the Communist Party. His objection and answer to the question were as follows:

"I wish to register a challenge as to the jurisdiction of this committee under Public Law 601, which is the committee's enabling legislation. This question, or any similar questions involving my associations, past or future, I am answering, but only under protest as to its constitutionality. But, under your jurisdiction as stated, I answer yes, I was a member of the Communist Party."

Committee counsel continued:

"The committee was advised that a witness by the name of Ross Richardson has stated that you acted as liaison between a Communist Party group on the campus and a member of the faculty at Cornell, and that you knew the name of the member of that faculty, who was a member of the Communist Party.

"Will you tell us who that member of the faculty was?"

After again conferring with his counsel, appellant stated:

"Sir, I am perfectly willing to tell about my own activities, but do you feel I should trade my moral scruples by informing on someone else?"

He was advised that moral scruples on his part "do not constitute a legal reason for declining to answer the question," and he was directed to answer. He declined, stating that he would not answer questions about other people, but only about himself.

Representative Doyle, a member of the subcommittee, then made the following statement:

"The young man read a statement in which he referred to Public Law 601. He no doubt read point 1 in that law in which it states our duty in Congress is to inquire into the extent—that is the language—'the extent.' Now manifestly our counsel, in asking you the name, etc., goes into the extent of the existence of the Communist cell, don't you see? All Communist activities. I wanted to emphasize that to you because you were referring to Public Law 601 and relying on that in your statement which you read. So I can come right back to you and ask, or call to your attention the fact that under our Congress we have the duty or we are charged with looking into the extent, you see, which the Communist Party has acted. Therefore, you see, I am calling your attention to the fact that this question goes into the extent. I just wanted to call that to your attention, just in case you didn't realize the kind of question that was."

Committee counsel then proceeded to ask the question forming Count 2 of the indictment:

"The committee received testimony from Ross Richardson to the effect that you collected certain donations for the benefit of the Com-

munist Party, and that on one occasion you delivered to him the sum of $100, without designating to him the source of it. Will you tell the committee, please, the source of that $100 contribution, if it was made?"

Appellant declined to answer, and thereafter, although directed to do so, specifically refused to answer the question.

Count 3 of the indictment is not before us as that count was dismissed by the District Court.

Committee counsel then asked the question forming Count 4:

"Were you acquainted with Homer Owen?"

Deutch refused to answer, stating that he did not think he "should discuss any people from now on because some people I am acquainted with and some I am not, so I don't think I want to discuss the people's names." He was directed to answer, but again he declined.

Deutch then related why he became interested in the Communist Party but refused to answer questions forming the basis of Count 5 of the indictment as to the identity of the person who had approached him on behalf of the Party. He was directed to answer, but declined, without giving reasons.

Appellant answered all further questions, none of which required him to give the names of other persons.

The District Court found that "the Committee was investigating the infiltration of Communism into educational and labor fields," and decided that the questions in Counts 1, 2 and 5 were pertinent, on their face, to that subject.

With respect to Count 4, the court pointed out that Homer Owen had been a student at Cornell University in an industrial relations course and that students in that course did temporary summer work in various labor unions, some of which were communist-controlled; that the committee desired to know what, if any, connection there was between students enrolled in that course and the communist-controlled unions; that the question of whether appellant was acquainted with Homer Owen was obviously a preliminary question that might have led to a line of inquiry within the scope of the inquiry, and, consequently, was a pertinent question.

Appellant was thereupon found guilty and sentenced.[5]

■ We believe the Government has proved beyond a reasonable doubt that the subject under inquiry and the pertinency of the questions were made to appear at the committee hearing with "indisputable clarity." See Barenblatt v. United States, 1959, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115; Watkins v. United States, 1957, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273; cf. Flaxer v. United States, 1958, 358 U.S. 147, 79 S.Ct. 191, 3 L.Ed.2d 183. The Supreme Court has indicated that the subject of a legislative investigation is "indisputably clear" when, considering all circumstances which may legitimately control the course of a congressional inquiry and which may be relevant to the awareness of the witness, the nature and purpose of the inquiry have been given such definiteness as to warn a reasonable man on the witness stand of the likelihood of criminal conviction, and to enable a trial court, jury and appellate court to perform their respective functions. See Barenblatt v. United States, supra; Watkins v. United States, supra. The pertinency of the questions asked appellant must be decided in the light of similar considerations.

Throughout his testimony, Deutch testified as to his own activities but, in reference to each of the counts under which he was convicted, he declined to answer the questions, not on the ground of pertinency or on any other ground except that it was against his "moral scruples" to answer questions about other people. Nor did he claim that he did not under-

5. The opinion of Judge Holtzoff finding the appellant guilty is reported in 147 F.Supp. 89, 91.

stand how the questions related to the subject under inquiry, or what that subject was. On the contrary, it is quite obvious that he recognized that the questions were pertinent to the subject under inquiry, and he based his refusal to answer solely and simply on the fact that he did not wish to give the names of other persons. That appellant was made fully aware of and was in fact aware of the purpose of the hearing and the pertinency of the questions seems to us to be free from doubt. The trend of the questions and his attitude toward them are significant; and the above quoted statements made to him by the committee counsel and a committee member clearly indicated the object of the inquiry and the pertinency of the questions. Not until the trial in the District Court, in what appears to be afterthought, did appellant raise the questions of pertinency and unawareness of the subject matter of the inquiry.

Appellant relies upon the objections above quoted, made at the commencement of the hearing at which he testified, and urges that his objection to the committee's jurisdiction and the constitutionality of the proceedings required explanation by the committee of the subject matter and the pertinency of any questions which might be asked. We cannot agree. It would require real stretching of the imagination to read into the statement made by Deutch an objection to pertinency—or anything that would in the slightest degree indicate that he was unaware of the subject under inquiry.

■ So far as appellant's claim that the questions involved here violate his First Amendment rights, we think this claim is foreclosed by Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241, 246, certiorari denied 1948, 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767, wherein we held that the "nature and scope of the program and activities [of the Communist Party] depend in large measure upon the character and number of [their] adherents," and that personnel is part of the subject. We do not read Barenblatt as to the contrary. As a matter of fact, Barenblatt recognized that First Amendment rights are not absolute and that resolution of the issue between those rights and the public interest involves a balance by the courts of the competing interests, and held that Congress should not be denied the power to legislate solely because the field of education is involved. In the present. case, prior witnesses had made certain statements but their testimony was inconclusive on the question of personnel. Indeed, we know of no reason why the committee was not entitled to have cumulative evidence of activities in connection with the continuing communist conspiracy.

We have examined the other contentions of appellant and find them equally without merit.

Affirmed.