# Continuing Obligations Under Congressional Subpoenas After the Adjournment of Congress

While congressional committees' subpoenas are no longer effective after Congress' adjournment *sine die*, the Administrator of the Environmental Protection Agency should, in the interest of comity and accommodation to the Legislative Branch, continue to be as responsive as possible to those committees' requests for documents and other information.

The Administrator's obligations under one of the subpoenas may be construed in light of the subcommittee chairman's subsequent modification on the record of its terms. Compliance with the subpoena as so modified cannot form the basis of the "willful default" that is necessary for prosecution under the relevant criminal contempt statutes, 2 U.S.C. §§ 192, 194.

December 23, 1982

MEMORANDUM OPINION FOR THE ADMINISTRATOR,
ENVIRONMENTAL PROTECTION AGENCY

This responds to your request for guidance in defining your outstanding obligations, if any, under the subpoenas served on you on October 21, 1982, by the Subcommittee on Oversight and Investigations of the House Committee on Energy and Commerce (Energy and Commerce Subcommittee subpoena), and on November 22, 1982, by the Subcommittee on Investigations and Oversight of the House Committee on Public Works and Transportation (Public Works Subcommittee subpoena).

The Energy and Commerce Subcommittee subpoena requires you to produce

> copies of all books, records, correspondence, legal and other memoranda, papers and documents relative to the Tar Creek, Oklahoma; Stringfellow Acid Pits, California; and Berlin and Farro, Michigan, hazardous waste sites, excepting shipping records, contractor reports and other technical documents.[1]

The Public Works Subcommittee subpoena dated November 16, 1982, requires production of

> all books, records, correspondence, memorandums, papers, notes and documents drawn or received by the Administrator and/ or her representatives since December 11, 1980, including dupli-

---

[1] Attachment to the Energy and Commerce Subcommittee subpoena, issued Oct 14, 1982.

cates and excepting shipping papers and other commercial or business documents, contractor and/or other technical documents, for those sites listed as national priorities pursuant to Section 105(8)(B) of P.L. 96–510, the "Comprehensive Environmental Response, Compensation, and Liability Act of 1980."

The Office of Legal Counsel has taken the view that the adjournment *sine die* at the conclusion of a particular Congress (in this case, the 97th Congress) causes a lapse in the effectiveness of subpoenas issued by committees and subcommittees of that Congress as far as imposing any continuing legal obligations to produce documents pursuant thereto.* Accordingly, we believe that the adjournment *sine die* of the 97th Congress, coupled with the convening of the 98th Congress, will terminate your legal responsibilities under both subpoenas. However, since both Subcommittees appear to have continuing interests in the documents embraced by the subpoenas, and in the interest of comity and accommodation to the needs of the Legislative Branch, we urge that you nevertheless continue to be as responsive as possible, within the bounds set forth in the President's November 30th memorandum to you,[2] to the requests of the Energy and Commerce and Public Works and Transportation Subcommittees.

With respect to the Energy and Commerce Subcommittee subpoena, we understand that the Environmental Protection Agency (EPA) has provided to the Subcommittee staff at the Subcommittee staff offices copies of all documents which are encompassed by the subpoena, except those which have been determined to be enforcement sensitive and which are therefore being withheld pursuant to the President's November 30, 1982, instruction to you. The withheld documents were identified by you to the Subcommittee at its hearing on December 14, 1982. For all documents which are being withheld, you have provided the Subcommittee with a detailed list describing the contents of each document, and giving the title, date, the author and addressee, and the bases upon which the document was determined to be enforcement sensitive. We understand that, at this time, all documents responsive to the Energy and Commerce subpoena which have been discovered in the three regional offices involved or anywhere else within EPA have been forwarded to Washington for review, and that all but 42 have been turned over to the Subcommittee. The likelihood that any further discoveries of documents which might have been inadvertently overlooked in the regional offices is apparently slight and if any are discovered, it would probably involve a very small number of documents. We recommend that you continue to forward any newly discovered nonsensitive documents to the Subcommittee, or, if the document must be withheld pursuant to the President's instructions, that you furnish to the Subcommittee a complete description of the document, including the basis for its nondisclosure in the same

---

* NOTE: *See* memorandum opinion for the Attorney General, Dec. 14, 1982 (Continuing Effect of a Congressional Subpoena Following the Adjournment of Congress), reprinted in this volume at p. 744, *supra*. Ed

[2] *See also* President Reagan's Nov. 4, 1982, Memorandum for the Heads of Executive Departments and Agencies re Procedures Governing Responses to Congressional Requests for Information.

form utilized with respect to the other withheld documents. We suggest that the transmittal letter also explain why the documents were not discovered prior to the return date of the subpoena.

With respect to the Public Works Subcommittee subpoena, Chairman Levitas, as you know, modified the terms of your compliance with the subpoena at the December 2, 1982, hearing on hazardous waste contamination at which you testified. He did so explicitly, stating that

> there is absolutely no need for the Environmental Protection Agency to reproduce any documents which are otherwise available to the subcommittee staff.[3]
>
> *        *        *        *        *
>
> As far as the documents that you have brought with you today, insofar as the committee is concerned they are not fully responsive to the subpoena of the committee. Under the circumstances I would suggest that they be held in abeyance until the matter is resolved one way or the other, and that they be maintained in your custody until that time.[4]

Chairman Levitas' statement was made in response to your testimony that the actual, physical production of all documents encompassed by the subpoena in the Subcommittee's offices "would require the location, segregation, duplication, photocopying and shipping of more than 787,000 pages of documents . . .,"[5] "could [not] be completed [until] between February 15th and March 1st, and would cost approximately $245,000."[6] In addition, you pointed out that producing all of these documents on a "rush" basis would require "the virtual halt of some segments of [EPA's] enforcement programs for several weeks."[7]

Notwithstanding the various deficiencies in the Public Works Subcommittee subpoena, without suggesting that it would have any continuing validity after the 98th Congress convenes, and without suggesting that the arguably relevant criminal contempt statutes, 2 U.S.C. §§ 192, 194, are applicable to the current situation, you have asked whether, absent those and other potential defenses, you could be held responsible for compliance with its literal demands in light of Chairman Levitas' apparent modification of his expectations regarding the subpoena.

---

[3] Transcript, Hearing on Hazardous Waste Contamination of Water Resources Before the Subcomm. on Investigations and Oversight of the House Committee on Public Works and Transportation, Dec 2, 1982, p. 123, lines 2902–04.

In addition, several other members of the Subcommittee also indicated that they were not interested in your producing copies of documents which they already have available to them in the regional and headquarters offices. *See, e g.*, Transcript, at p. 67, lines 1573–82; p. 77, lines 1821–25; p 97, lines 2281–86; p. 99, lines 2334–39; p. 119, lines 2801–03.

[4] *Id.* at 135, lines 3192–98.

[5] *Id.* at 55–56, lines 1301–03.

[6] *Id.* at lines 1316–18. These figures reflect computations based on work performed on a "rush" basis, with the use of contractors, overtime, and the reassignment of resources and personnel within the Agency. Performance of the work on a non-"rush" basis would take more than 10,000 hours of staff time, cost roughly $145,000, and could probably be completed between May 15th and June 15th.

[7] *Id.* at lines 1318–19.

Decisions of the Supreme Court and the courts of appeals construing 2 U.S.C. § 192[8] have uniformly held that a congressional request for testimony or the production of documents by a witness which is suspended, delayed, or abandoned by a Subcommittee member in colloquy with the witness, and is not later renewed by the Subcommittee, cannot form the basis of the "willful default" that is necessary for a lawful prosecution under § 192. *See Flaxer* v. *United States,* 358 U.S. 147 (1958).[9] *See also Emspak* v. *United States,* 349 U.S. 190 (1955); *Quinn* v. *United States,* 349 U.S. 155 (1955); *Miller* v. *United States,* 259 F.2d 187 (D.C. Cir. 1958).

We conclude that, when considered in light of the facts that the Subcommittee apparently was not interested in any of the documents if it was not to receive all of them,[10] the provision of the statute which requires a violation to be willful, and in light of the cases discussed above, Chairman Levitas' modification on the record of the terms of your compliance with the subpoena issued by his Subcommittee is sufficient to support a construction of your obligation that, without taking into account other defenses, requires only that you make the requested documents available in the EPA offices where the documents generally are maintained. However, in keeping with the three-tiered screening procedure that you have developed to ensure that career and policy level attorneys in the Environmental Protection Agency, the Land and Natural Resources Division of the Department of Justice and the Office of Legal Counsel of the Department of Justice review all documents which are withheld as enforcement sensitive, we would recommend

---

[8] 2 U.S.C. § 192 provides.

> Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months

[9] The facts of *Flaxer* v *United States, supra,* are very similar to the circumstances raised by Chairman Levitas' modification of the Public Works Subcommittee's subpoena. In *Flaxer, supra,* the president of a labor union was subpoenaed to appear before a Senate subcommittee on October 5, 1951, and to bring with him certain documents He appeared, but did not bring all of the requested documents, apparently because of insufficient time to gather them all The Senator who chaired the hearing, after colloquy with the witness, said, "Since you have made the reply that it could be done in a week, that will be the order of the committee, that you submit that information as requested by counsel for the committee within 10 days from this date." 358 U.S at 149–50. The Court held that the witness could not thereafter be prosecuted under 2 U.S C. § 192 for willful default because he was not clearly apprised that the subcommittee continued to require the documents on the return date of the subpoena rather than at the later date. The Court stated.

> In the present case, the position of the Committee was clear in one respect: it was plain it wanted the [documents] But, to say the least, there was ambiguity in its ruling on the time of performance. The witness could well conclude, we think, that he had 10 days more to consider the matter, 10 days to face the alternative of compliance as against contempt. Certainly we cannot say that petitioner could tell with a reasonable degree of certainty that the Committee demanded the [documents] this very day, not 10 days hence.

*Id.* at 151. The Court then reiterated its language in *Quinn* v. *United States,* 349 U.S. at 170:

> Giving a witness a fair appraisal of the committee's ruling on an objection recognizes the legitimate interests of both the witness and the committee Just as the witness need not use any particular form of words to present his objection, so also the committee is not required to resort to any fixed verbal formula to indicate its disposition of the objection. So long as the witness is not forced to guess the committee's ruling, he has no cause to complain. And adherence to this traditional practice can neither inflict hardship upon the committee nor abridge the proper scope of legislative investigation

358 U.S at 151–52.

[10] Transcript, at 135, lines 3192–98

that you continue your policy of having copies of documents which are determined by your regional staff potentially to be in the enforcement sensitive category shipped from the regional offices to Washington so that further review may take place. Once a determination has been made to withhold any documents pursuant to the President's instruction, you should continue to provide the Subcommittee, as you have in the past, with a list of such documents, describing their contents and explaining the bases for nondisclosure.

In order to avoid any misunderstanding relative to your further obligations under the Public Works Subcommittee subpoena, and to confirm our interpretation of your remaining responsibilities, I suggest that you send letters in the attached form to Chairmen Levitas and Dingell. This will give each of them an opportunity to ascertain your intentions with respect to the documents sought by the subpoenas and to make any further comments they may deem appropriate.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

Attachment

Honorable John Dingell
Chairman
Subcommittee on Oversight and Investigations
Committee on Energy and Commerce
United States House of Representatives
Washington, D.C. 20515

DEAR CHAIRMAN DINGELL:

In an effort to cooperate as fully as possible with your Subcommittee in connection with the subpoena served on me by your Subcommittee on October 21, 1982, and with due regard for my responsibility to carry out the President's November 30 instruction to me "not to furnish copies of [sensitive documents found in open law enforcement files] to the Subcommittee[ ]" but to "remain willing to meet with [the] Subcommittee to provide such information as [I] can," and notwithstanding your Subcommittee's vote on December 14, 1982, to find me in contempt of Congress for complying with the President's instructions, I wish to set forth the intentions of the Environmental Protection Agency with respect to the documents sought by your Subcommittee under the October 21 subpoena, and to provide you with an opportunity to clarify, if you deem it appropriate to do so, the position of your Subcommittee in this regard.

I believe at this time that we have furnished all documents relating to the Stringfellow Acid Pits, Tar Creek, and Berlin and Farro sites which are responsive to your subpoena, except for the 42 documents which, having been determined to be enforcement sensitive in the manner described to you on December 14, 1982, are being withheld pursuant to the President's November 30, 1982, instructions to me. For those documents withheld from your review, we have provided you with a description of the contents of the documents, the name and title of the author and the addressee, the date, the number of pages, and an explanation of why we believe that the document is enforcement sensitive.

Should any further documents relating to the three sites encompassed by your subpoena be found in our headquarters or regional office files, we will forward the documents to you, or, upon a determination that the documents are enforcement sensitive, we will forward to you a description of the document and an explanation of the basis for its nondisclosure.

819

We remain willing to provide you, your Subcommittee, or your Subcommittee's staff with any information of a factual, technical, or policy nature regarding the three specified hazardous waste sites to the extent not inconsistent with the President's instructions.

Sincerely,


Anne M. Gorsuch
Administrator
Environmental Protection Agency