**James P. CORCORAN, Superintendent of Insurance of the State of New York, as Liquidator of American Fidelity Fire Insurance Company and American Consumer Insurance Company, Plaintiff–Appellant–Cross–Appellee,**

v.

**AMERICAN PLAN CORPORATION, Abe Jay Lieber, Marcia E. Lieber, Marc D. Lieber, Albert W. Ambs, Harold L. Fisher, Robert C. Hall, Patrick Heaney, Ted Mendelson, Harvey L. Clark, Alan Ehrlich, Craig D. Goldman, Roger Condra, Murray Lemonik, Jerome S. Levy, Robert W. McCausland, Michael Mendelbaum, Richard H. Sprague, and Barbara Chasan, Defendants–Appellees,**

**Robert C. Hall,
Defendant–Appellee–Cross–Appellant.**

Nos. 878, 971, Dockets 88–9027, 88–9089.

United States Court of Appeals,
Second Circuit.

Argued March 22, 1989.

Decided Sept. 18, 1989.

**17**

Michael S. Feldberg, New York City (George G. Nelson, Shea & Gould, New York City, of counsel), for plaintiff-appellant-cross-appellee.

Martin I. Kaminsky, New York City (W. Hans Kobelt, Pollack & Kaminsky, New York City, of counsel), for defendant-appellee-cross-appellant Robert C. Hall.

John M. Burns, III, Burns & Beck, New York City, for defendants-appellees Marcia Lieber, Albert W. Ambs, Robert W. McCausland and Barbara Chasan.

Stephen W. Grafman, Kirkpatrick & Lockhart, Washington, D.C., for defendants-appellees Abe Jay Lieber and Marc D. Lieber.

Kenneth K. Fisher, Vivian Shevitz, Jane Simkin Smith, Fisher & Fisher, Brooklyn, New York, for defendant-appellee Harold L. Fisher.

Before OAKES, Chief Judge, and KEARSE and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

The Superintendent of Insurance of the State of New York (the "Superintendent") brought this civil action as liquidator of two insurance companies, American Fideli-ty Fire Insurance Company ("AFFI") and American Consumer Insurance Company ("ACI").[1] The Superintendent's complaint alleged that a former parent company of AFFI and ACI, American Plan Corporation ("APC"), and certain officers, directors and shareholders of APC, AFFI and ACI stole millions of dollars from AFFI and ACI and concealed the thefts, thereby violating the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 U.S.C.A. §§ 1964(c) (West 1984) and 1962(a)-(d) (West 1984 & Supp.1989), through predicate acts of mail fraud in contravention of 18 U.S.C. § 1341 (1982). The complaint also alleged state law claims for common law fraud, waste of corporate assets, breach of fiduciary duties and negligence against all defendants, and for the imposition of a constructive trust upon defendants APC, Abe Jay Lieber, Marcia E. Lieber and Marc D. Lieber with respect to assets fraudulently transferred from AFFI and ACI.

The district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6), holding that the Superintendent did not adequately plead predicate acts of mail fraud to sustain his RICO claim. Since the RICO claim was plaintiff's sole basis for federal jurisdiction, the district court also dismissed the pendent state law claims.

We affirm.

### Background

In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we must accept the allegations of plaintiff's complaint as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964). We therefore proceed to summarize those allegations.

Defendants' looting of AFFI and ACI is alleged to have occurred between late 1982, when Abe Jay Lieber acquired control of APC, and September 6, 1985, when the

---

**1.** On March 26, 1986, the Supreme Court of the State of New York, County of Nassau, appointed the Superintendent as statutory liquidator of AFFI and ACI. Under N.Y. Ins. Law § 7405(b) (McKinney 1985), the Superintendent as liquidator is vested with all of the assets and liabilities of AFFI and ACI, including any causes of action they may have.

Supreme Court of the State of New York, County of Nassau, placed AFFI and ACI in rehabilitation. At all relevant times, AFFI and ACI were property/casualty insurance companies. The stock of ACI was wholly owned by AFFI. In turn, APC owned all of the preferred stock, and ninety-four percent of the common stock, of AFFI.

The complaint sets forth three basic schemes undertaken by defendants pursuant to their plan to drain AFFI and ACI of their assets. The first involved charging AFFI and ACI grossly excessive management fees. Under N.Y. Ins. Law § 1505(a) (McKinney 1985) and the management agreements between APC and its subsidiaries, APC was permitted to charge reasonable actual operating expenses incurred in managing the businesses of AFFI and ACI, exclusive of debt service costs, as "management fees" to AFFI and ACI. APC is alleged, however, to have taken grossly excessive, unreasonable and unjustified monies from AFFI and ACI as so-called "management fees." Specifically, in 1984 the combined premiums earned and net investment income of AFFI and ACI amounted to $17,292,164; between August, 1984 and September, 1985, APC took at least $9,621,536 from AFFI and ACI as management fees. These fees were used to pay expenses or salaries not properly attributable to AFFI and ACI, including the entire salary of defendant Abe Jay Lieber, part of which should have been charged to other companies controlled by Lieber.

The second scheme alleged in the complaint was a "loan fraud" involving approximately $6,800,000 which APC borrowed from ACI (over and above the management fees). The Supreme Court of the State of New York, County of Nassau, ordered APC to repay these monies. Purportedly to comply with this order, APC transferred a real estate lien note with a face value of $6,446,696 to ACI, secured by a deed of trust on a warehouse property in Collin County, Texas (the "Amdall Property"), fraudulently representing that it had a net equity in the Amdall Property of at least $6,400,000, despite the fact that defendants knew that APC had virtually no equity therein.

The third scheme was a "capital fraud" relating to a state court order which required APC to transfer assets worth at least $2,000,000 to AFFI in order to meet minimum capital requirements imposed upon insurance companies by state law. APC transferred real estate assets (the "McCarty Properties") in purported compliance with this order, falsely representing their worth to the state court and others, despite the fact that APC's net equity in the transferred assets was worth only approximately $270,000.

It is alleged that misrepresentations were made to the Insurance Department of the State of New York (the "Department"), of which the Superintendent is the head, see N.Y. Ins. Law § 201 (McKinney 1985), by means of monthly and annual reports of AFFI and ACI mailed to the Department from Plano, Texas. These mailings are claimed to have violated 18 U.S.C. § 1341 (1982), thereby qualifying as RICO predicate acts pursuant to 18 U.S.C.A. § 1961(1)(B) (West 1984 & Supp.1989). Specifically, it is alleged that various monthly and annual reports did not reveal the excessive nature of the management fees, an annual report falsely represented that the approximately $6,800,000 loan from ACI to APC was fully secured as of February 1, 1984 by the Amdall Property, and that various monthly and annual reports fraudulently represented that the transfer of the McCarty Properties constituted a $2,000,000 contribution to the surplus of AFFI and ACI.[2]

This action commenced on May 21, 1986. Soon thereafter, several of the defendants moved to dismiss or in the alternative for summary judgment, which motions were denied by the district court by order entered February 6, 1987. In a memorandum and order entered November 8, 1988, how-

---

**2.** The complaint also alleged additional, nonspecific claims of mail and wire fraud. These allegations were stricken by the district court as violative of Fed.R.Civ.P. 9(b) by order entered February 6, 1987.

ever, the district court granted the defendants' renewed motion to dismiss, based upon the intervening authority of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), and *United States v. Evans*, 844 F.2d 36 (2d Cir.1988).

The district court held that under *McNally* and *Evans*, mail fraud is committed only if the party deceived by the fraudulent scheme is deprived of money or property; *i.e.*, that "[t]he mail fraud statute, as interpreted by *Evans*, requires a convergence of the deceived and the injured." The court further found that the parties alleged to be injured by defendants' scheme were AFFI and ACI, while the party alleged to be deceived was the Superintendent in his capacity as regulator of the New York insurance industry. The court then held that the Superintendent as regulator is not the same legal entity as the Superintendent as liquidator of AFFI and ACI, and concluded that the Superintendent's complaint accordingly did not allege acts of mail fraud which could support a claim under RICO. In the resulting absence of federal jurisdiction, the Superintendent's pendent state law claims were also dismissed.

On November 28, 1988, final judgment was entered dismissing the complaint. The Superintendent filed a timely notice of appeal.[3]

### Discussion

The issue to be resolved on this appeal is whether the Superintendent's complaint alleges a valid mail fraud claim. That complaint alleges violations of 18 U.S.C. § 1962(a)-(c) (1982) (as well as a conspiracy to violate those subsections in contravention of 18 U.S.C.A. § 1962(d) (West 1984 & Supp.1989)), in each case asserting an operative "pattern of racketeering activity."

This phrase is in turn defined in 18 U.S.C. § 1961(5) (1982), to require "at least two acts of racketeering activity." The only such acts alleged are mail frauds indictable under 18 U.S.C. § 1341 (1982), which are included in the RICO definition of racketeering activity, *see* 18 U.S.C.A. § 1961(1)(B) (West 1984 & Supp.1989). Thus, for the Superintendent's complaint to meet the RICO predicate act requirement, it must allege a valid mail fraud claim.

The federal mail fraud statute provides in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1341 (1982). The Supreme Court held in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), that this statute "clearly protects property rights, but ... not ... the intangible right of the citizenry to good government," *id.* at 356, 107 S.Ct. at 2879, and reiterated this ruling in *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987).[4]

Our recent decision in *United States v. Evans*, 844 F.2d 36 (2d Cir.1988), further elaborated upon the scope of the mail fraud statute. *Evans* stated that "as we read *McNally*, the Supreme Court did not focus on whether the person deceived also had to lose money or property," *id.* at 39, went on

---

**3.** Defendant-appellee-cross-appellant Robert C. Hall has filed a cross appeal from the district court's denial of his earlier motion for summary judgment. Hall states in his brief on appeal, however, that "[i]f the Court affirms the Judgment on the main appeal, there will be no need to address Hall's cross appeal." We accordingly have not done so, in view of our disposition of the Superintendent's appeal.

**4.** This ruling was overriden by the recent enactment (effective November 18, 1988) of 18 U.S. C.A. § 1346 (West Supp.1989), which provides that "[f]or the purposes of this chapter [which includes § 1341], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." *See United States v. Turoff*, 701 F.Supp. 981, 990 (E.D.N.Y.1988). This amendment has no application in the instant case. *See United States v. Davis*, 873 F.2d 900, 902 (6th Cir.1989).

to observe that "[n]onetheless, this may be the correct view of the statute," *id.*, but concluded that "the case before us today does not require us to decide this general question," *id.* at 40. Rather, we premised our ruling against statutory coverage upon *McNally's* requirement that " 'any benefit which the Government derives from the [wire or mail fraud] statute[s] must be limited to the Government's interest as property-holder.' " 844 F.2d at 40 (quoting *McNally*, 483 U.S. at 359 n. 8, 107 S.Ct. at 2881 n. 8).

The district court in the instant case nonetheless treated the *Evans* dictum as binding, ruling that "the mail fraud statute, as interpreted by *Evans*, requires a convergence of the deceived and the injured." The court then dismissed the Superintendent's complaint because it alleged that the party deceived was the Superintendent, in his role as regulator of the insurance industry, while the parties injured were AFFI and ACI, whose "looting" by defendants was the basis of the complaint.

The Superintendent's complaint was filed before the *McNally* and *Evans* decisions. It seems clear that the original theory supporting his mail fraud claims was that the defendants' deception of the Superintendent postponed the Superintendent's detection of defendants' actions and thereby enabled their looting of AFFI and ACI to continue. Thus, the Superintendent originally claimed that he was the deceived party and AFFI and ACI were the injured parties.

On appeal, however, the Superintendent has abandoned his original theory, conceding that *Evans* establishes that federal mail fraud occurs only if the party deceived by the fraudulent scheme is also financially injured by it. The Superintendent now contends that his complaint meets this standard, since the same parties, AFFI and ACI, were both deceived and injured by appellees' fraudulent scheme.

For reasons stated below, we conclude that under either theory, the Superintendent's complaint does not allege a valid mail fraud violation, and therefore was properly dismissed.

### A. The Superintendent as the Deceived Party.

■ We agree with the district court that under a fair reading, the complaint alleges that the Superintendent was the party deceived and AFFI and ACI were the parties injured by the alleged mail fraud. Furthermore, we also agree that under the authority of *McNally* and *Evans*, the complaint does not state a valid mail fraud claim. As in *Evans*, however, we find it unnecessary to answer the general question whether the mail fraud statute requires that the party deceived also be the party injured.[5]

The defendants in *Evans* were charged with selling arms to Iran:

> by deceiving the United States about the true identity of the country purchasing the arms in order to obtain the necessary government approval for the transaction. Specifically, defendants are charged with conspiring to provide and providing false end user certificates and other documents to the United States, hoping to deceive the government into thinking the arms were being sold to an acceptable country.

844 F.2d at 37. The defendants here are also charged with sending false documents to a governmental regulator in order to prevent detection of their illegal activity.

As indicated earlier, *Evans* ruled, following *McNally*, that the mail fraud statute protects only the government's interest as property-holder, excluding protection of a governmental entity in its capacity as regu-

---

5. Subsequent to our ruling in *Evans*, the Supreme Court decided *Schmuck v. United States*, —— U.S. ——, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), affirming the mail fraud convictions of a used car distributor who set back odometers to a lower mileage before selling cars to retailers. Presumably, both the retailers and their customers who ultimately bought the cars were deceived, while in at least some cases only the customers sustained economic injury. The Court did not address the question whether the same party must be both deceived and injured to state a violation of section 1341.

lator. This rationale is clearly applicable to the Superintendent's mail fraud allegations. The Superintendent makes no attempt to allege that the Department had any property right or interest in the monies that defendants allegedly stole from AFFI and ACI. *Cf. United States v. Turoff,* 701 F.Supp. 981, 985–86 (E.D.N.Y.1988) (New York City has property interest in taxi medallions it issues and annual license renewal fees therefor, distinguishing *Evans.*) Accordingly, *McNally* and *Evans* require dismissal.

We do not read the Seventh Circuit's decision in *United States v. Bailey,* 859 F.2d 1265 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989), as necessarily contrary to our ruling. In *Bailey,* the court affirmed mail fraud convictions of an officer of a savings and loan corporation. The indictment alleged that the defendant committed mail fraud by mailing false reports to the Federal Savings and Loan Insurance Corporation ("FSLIC") with a view to "expos[ing] [the corporation's] money and property to plunder by artificially keeping [the corporation] in operation." 859 F.2d at 1276. The Superintendent presses the analogy to the situation here. In *Bailey,* however, "the FSLIC had a property interest at stake: the $100,000 per depositor it might have had to pay had [the corporation] gone under." *Id.* at 1278 n. 3. There is no corresponding property interest here.

A more recent Seventh Circuit decision, *United States v. Cosentino,* 869 F.2d 301 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3220, 106 L.Ed.2d 570 (1989), lends greater support to the Superintendent's cause. In affirming mail fraud convictions of defendants who looted one Kenilworth Insurance Company, that court said:

> In this case, Kenilworth's already precarious financial position was made worse because the defendants were able to deceive the Department of Insurance about Kenilworth's situation and keep the agency open longer, as more and more assets disappeared through Robco and as the insurance written through Kenilworth exceeded its reserves to a greater and greater extent.

*Id.* at 307. We adhere, however, to the *McNally/Evans* interpretation of the mail fraud statute as protecting only a governmental interest as property-holder, rather than regulator.

Finally, we agree with the district court's conclusion that:

> The plaintiff was deceived in its role as regulator of the insurance industry to the detriment of [AFFI] and ACI. The fact that subsequently the superintendent inherited [AFFI] and ACI's causes of action as liquidator does not alter the fact that it was the subsidiaries who were injured by the fraud rather than the insurance department.

## B. *AFFI and ACI as the Deceived Parties.*

On appeal, the Superintendent attempts to save his complaint by arguing that AFFI and ACI were both injured and deceived. We disagree.

The Superintendent contends that "[a]s a practical matter, the assets of [AFFI] and ACI were the premiums paid by their policyholders," with the result that "part of the 'legal personality' of [AFFI] and ACI is the interest of their policyholders." Accordingly, since the Department's regulation of AFFI and ACI is conducted in the interest of the public and policyholders, the deception of the Superintendent is a deception of the policyholders whom he represents, who are also part of the "legal personality" of AFFI and ACI, resulting in the "convergence of the deceived and the injured" required by the district court's interpretation of *Evans.*

Even accepting this extremely strained reasoning *arguendo,* however, the Superintendent's complaint is not salvaged. Nowhere in his complaint does the Superintendent assert that any policyholders ended up without the insurance coverage for which they paid, or were forced to pay higher premiums as the result of defendants' actions. Rather, the Superintendent alleges that defendants' misrepresentations "lulled the Superintendent (and, through him, the [AFFI] and ACI policyholders) into a false sense of security as to the financial soundness of [AFFI] and ACI...." Defendants thereby presumably deprived the pol-

icyholders of their right to deal with an insurance company that was effectively regulated by the Superintendent. In our view, any such right is analogous to the "intangible right of the citizenry to good government" which was repudiated by the Supreme Court in *McNally*, 483 U.S. at 356, 107 S.Ct. at 2879.

In *McNally*, the defendants selected the insurance agencies from which the Commonwealth of Kentucky would purchase its insurance, and arranged to profit personally from resulting kickbacks. The Supreme Court reversed the defendants' mail fraud convictions because it was not proven that the Commonwealth of Kentucky, the party allegedly deceived by defendants' scheme, was deprived of any money or property. Of specific relevance here, the Court observed that: "[i]t was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance." *Id.* at 360, 107 S.Ct. at 2882.

Finally, since the Superintendent's only federal claim cannot be sustained, the pendent state law claims were also properly dismissed.

### Conclusion

The judgment of the district court is affirmed.