**Leslie SHAW, Plaintiff,**

v.

**ROLEX WATCH U.S.A., INC., et al., Defendants.**

**No. 86 Civ. 5244 (WCC).**

United States District Court, S.D. New York.

Dec. 21, 1989.

Soller, Singer & Horn (Carl R. Soller, Ellen L. Federman, of counsel), New York City, for plaintiff.

Gibney, Anthony & Flaherty (Stephen F. Ruffino, of counsel), New York City, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Defendants Rolex Watch U.S.A., Inc. and Rolex Industries, Inc. (collectively "defendants") move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons articulated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Leslie Shaw commenced this action on June 30, 1986. Shaw alleged that defendants had unlawfully engaged in a conspiracy to obtain protection against the unauthorized importation of Rolex watches. Shaw claimed that defendants submitted fraudulent statements to United States Customs officials that they were not under common ownership or control with the owner of the Swiss registration.[1] These allegedly false representations consisted of a statement filed by Rolex with Customs on January 7, 1983 and letters sent to Customs on April 12, 1983 and May 11, 1984.

In a prior Opinion and Order, this Court dismissed all of Shaw's claims, except claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) et seq. The Opinion and Order also limited Shaw's RICO claims to his interest in eight Rolex watches alleg-

---

1. 19 U.S.C. § 1526(a) allows the owner of a registered trademark to prevent the unauthorized importation of products bearing that trademark. Once the trademark is registered with the United States Customs Service ("Customs"), Customs will seize trademarked goods imported by someone other than the owner. When the foreign and domestic trademark owners are under common ownership and control, the protections of this section are unavailable. See 19 C.F.R. § 133.21(c)(2).

edly seized by Customs. *See Shaw v. Rolex Watch,. U.S.A., Inc.*, 673 F.Supp. 674 (S.D.N.Y.1987).

## DISCUSSION

The analysis under Rule 12(c) is identical to that under Rule 12(b)(6). *See* Wright & Miller, *Federal Practice and Procedure* § 1367 at 688–89. A motion to dismiss should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin*, 700 F.2d 37, 40 (2d Cir.1983). The court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

A RICO violation requires proof of at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(5). The predicate acts which Shaw alleges as a basis for his RICO claims are wire fraud and mail fraud, 18 U.S.C. §§ 1341, 1343 and violations of the National Stolen Property Act, 18 U.S.C. §§ 2314, 2315. In order to meet the predicate act requirement of the RICO statute, Shaw must state at least two valid claims under any of these statutes.

## I. MAIL AND WIRE FRAUD

The mail and wire fraud statutes[2] prohibit the use of the interstate mail or wires to further any scheme to defraud or to obtain money or property by false or fraudulent pretenses. 18 U.S.C. §§ 1341, 1343. The leading case interpreting the mail fraud statute, *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), holds that the statute applies only to property rights. In *Carpenter v. United States*, 484 U.S. 19, 25, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987), the Supreme Court confirmed *McNally's* interpretation of the mail fraud statute as "limited in scope to the protection of property rights."

■ Defendants first argue that Shaw's claim must be dismissed because Shaw has not alleged a scheme by defendants to defraud in order to obtain money or property. In *McNally*, the Supreme Court explained that the phrases "to defraud" and "for obtaining money and property by means of false or fraudulent pretenses, representations or promises....," which appear in the disjunctive in the statute, are not to be construed independently so that the former phrase includes intangible rights. *McNally*, 483 U.S. at 358, 107 S.Ct. at 2880–2881. However, this does not mean, as defendants appear to assume, that it is essential to show that the scheme was designed to *obtain* money or property. Rather, a mail fraud claim is sufficient if it is alleged that the defendant intended fraudulently to *deprive* another of money or property. *Id.* ("the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes' ") (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)).

■ Shaw claims that defendants deceived Customs "in order to obtain a recordation" of its trademark and "gain the protections offered by Customs regulations." Complaint ¶¶ 30–33, 40, 41, 69. Shaw did not allege that defendants acted to defraud Customs of money or property. Nor has Shaw alleged that defendants' actions were taken in order to obtain money or property from Shaw or to deprive Shaw of the eight watches which are the focus of this claim. Because Shaw's antitrust claim that defendants attempted to monopolize

---

**2.** Because the elements necessary to establish their violations are essentially the same, the identical analysis is applied to both the mail and wire fraud statutes. *See Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). This Court's discussion will focus on the mail fraud statute, which provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises, ... for the purpose of executing such scheme or artifice or attempting to do so [uses the mails or causes them to be used,] shall be fined not more than $1,000 or imprisoned not more than five years, or both.

972

trade in Rolex watches was previously dismissed by this Court, no claim remains that defendants' actions were intended to obtain money by monopolistic practices. However, the complaint does allege that defendants acted in order to preclude Shaw from importing watches. Complaint ¶ 60. This is a sufficient allegation of defendants' fraudulent intent.

Defendants also argue that reliance is a necessary element of a mail fraud claim. In its previous Opinion and Order, this Court explicitly held that Shaw's complaint failed to make proper allegations of reliance. Despite his protestations to the contrary, as this Court has previously decided, Shaw did not rely on defendants' statements because he alleged that he was aware of their falsity and accordingly proceeded to attempt the importation of the eight watches.

While reasonable reliance is an element of common law fraud, courts have differed in their determination of whether it is required under the mail fraud statute. Some courts explicitly reject the need for the intended victim to show detrimental reliance on mailed misrepresentations. *See Brandenberg v. Seidel*, 859 F.2d 1179 (4th Cir.1988); *Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475 (5th Cir.1986). Other courts hold that reliance is a necessary element under the mail fraud statute. *Grantham & Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 606 (6th Cir.1987); *James A. Jennings Co. v. Calgi*, No. 85 Civ. 8787, 1986 WL 10721 (S.D.N.Y. Sept. 19, 1986); *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985).

This Court agrees with the line of cases which hold that the mail fraud statute itself does not require a showing of reliance. The express language of the mail fraud statute does not include a reliance requirement. The statute specifically sets forth the two elements of a mail fraud offense: a scheme to defraud and use of the mails to execute the scheme. *See United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir.1970); *United States v. Goldberg*, 455 F.2d 479, 481 (9th Cir.), *cert. denied,*

406 U.S. 967, 92 S.Ct. 2411, 32 L.Ed.2d 665 (1972).

Even though the mail fraud statute contains no reliance requirement, it does not necessarily follow that a plaintiff need not show reliance in order to recover under civil RICO. RICO section 1964(c) provides a private cause of action for:

Any person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. (emphasis added).

The language "by reason of" imposes a causation requirement on plaintiffs. *Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir.1988); *Grantham*, 831 F.2d 596, 606 (6th Cir. 1987). When the predicate acts alleged are mail and wire fraud, the question arises whether this language imposes a reliance requirement that is lacking in the mail fraud statute itself. One court has ruled that it does. In *Brandenberg*, the Fourth Circuit Court distinguished between the elements necessary to establish a violation of the mail fraud statute, which does not require a showing of detrimental reliance, and the elements necessary to establish injury "by reason of" a predicate act of mail fraud within the meaning of Section 1964(c). The court stated that, unlike the mail fraud statute, Section 1964(c) requires a showing by the plaintiff of plaintiff's detrimental reliance. *Brandenberg*, 859 F.2d at 1188 n. 10; *Grantham*, 831 F.2d 596 (both mail fraud statute and RICO require a showing of detrimental reliance by plaintiff).

This Court agrees with the Fourth Circuit Court to the extent that any injury suffered by Shaw must result from reliance on defendants' alleged fraud in order to meet the causation requirements of Section 1964(c). However, this Court will not go as far as the Fourth Circuit Court in requiring that the reliance must be that of the plaintiff. Shaw contends that the requirement of reliance is supplied by the allegation that Customs was deceived by

defendants' false statements and that this caused his injury. This Court agrees. A plaintiff who is injured as a proximate result of fraud should be able to recover regardless of whether he or a third party is the one deceived. *See Texas Air Corp. v. Air Line Pilots Assoc. Int'l.*, 1989 WL 146414, 1989 U.S. Dist. LEXIS 11149 (S.D. Fla. July 14, 1989) (person injured states a claim even though third party was deceived); *see also, Galerie Furstenberg v. Coffaro*, 697 F.Supp. 1282 (S.D.N.Y.1988) (mail fraud complaint sufficient where art publisher alleged injury caused by art merchants and retail outfits' fraudulent mailings to customers).

In support of their argument that Shaw cannot recover under the mail fraud statute because he is not the party who was deceived, defendants cite two recent Second Circuit cases which discuss what defendants label the "convergence theory." In each, the Second Circuit Court has expressed approval, in dicta, for the proposition that the party deceived must also lose money or property. *Corcoran v. American Plan Corp.*, 886 F.2d 16 (2d Cir.1989); *United States v. Evans*, 844 F.2d 36, 39 (2d Cir.1988). In *Evans*, the Second Circuit Court stated that, "[i]f a scheme to defraud must involve the deceptive obtaining of property, the conclusion seems logical that the deceived party must lose some money or property." *Evans*, 844 F.2d at 39.

Defendants read *Evans* and *Corcoran* to require the injured party and the deceived party to be identical. However, in both *Evans* and *Corcoran,* the plaintiff was the party who was deceived and not the party injured. The case at bar presents the opposite situation. Shaw alleges that Customs was deceived and that Shaw was injured. The dicta in *Evans* and *Corcoran* should not be extended to deny recovery to a plaintiff who was proximately injured by defendants' deception of a third party. A

more logical reading of that language is merely that a plaintiff who has not suffered an injury recognized by the mail fraud statute lacks standing. Because Shaw alleged that he was injured through defendants' deceit of Customs—through which the watches necessarily had to pass—he has stated a claim under RICO for the predicate acts of mail and wire fraud.

## II. NATIONAL STOLEN PROPERTY ACT

The National Stolen Property Act, 18 U.S.C. §§ 2314, 2315, prohibits the interstate transportation of goods knowingly stolen, converted, or taken by fraud.[3] Section 2314 provides in relevant part:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Defendants raise three challenges to Shaw's allegations under section 2314: 1) Shaw's interest in speculative lost profits are not goods within the statute 2) Shaw's goods were not taken, and if taken were not taken by fraud, and 3) no interstate transportation of goods knowingly taken by fraud occurred.

Defendants maintain that Shaw's allegations that defendants caused Customs to transport "the money and property of [Shaw] and other United States importers" refers to the alleged prospective lost profits that Shaw and other importers may have made if allowed to import Rolex watches. Complaint ¶ 72. Defendants then argue that Shaw's interest in hypothetical lost profits is not a "good" within the meaning of Section 2314.[4] Section 2314 reaches actions which interfere with prop-

**3.** In its prior Opinion and Order, this Court found it unnecessary to consider whether Shaw's allegations under the National Stolen Property Act were adequate as a matter of law. Because the issue has been presented in this motion and both parties have addressed the merits, this Court finds it appropriate to determine the sufficiency of the pleadings at this time.

**4.** This Court notes that any claim of lost profit is limited to the eight watches allegedly seized by Customs.

**974**

erty interests tantamount to ownership. *See United States v. Bennett*, 665 F.2d 16, 22 (2d Cir.1981). Because there is no property interest tantamount to ownership in speculative lost profits as separate from the goods themselves, this Court agrees with defendants that lost profits do not fall within the ambit of the statute. *See United States v. Carman*, 577 F.2d 556, 565 (9th Cir.1978) (Section 2314 does not "embrace every fraudulent scheme which, however remotely, diminishes another's wealth.").

This reduces plaintiff's claim to the eight confiscated watches themselves. Defendants first argue that these watches were not stolen, converted or taken by fraud. Certainly, no contention can be made that the goods were either stolen or converted. Thus, Shaw's only possible claim is that the watches were taken by fraud. Under the applicable regulations, the importer is allowed to export seized goods when the United States owner denies permission to import. 19 C.F.R. § 133.23(b). In this case, the watches were held by Customs for an unstated period of time and, according to defendants, ultimately returned to Shaw. Contrary to defendants' assertions, Customs' retention of the watches, regardless of whether they were ultimately returned, interfered with Shaw's rights and benefits of ownership and thus constituted a taking. *See United States v. Turley*, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430 (1957) (precursor to National Stolen Property Act applies to felonious takings with intent to deprive the owner of the rights and benefits of ownership).

■ Defendants then argue that even if the seizure of the watches constituted a taking, the watches were not taken by fraud. However, defendants' allegedly fraudulent actions caused the recordation which induced Customs to seize the watches when Shaw attempted to import them. This is sufficient to constitute a

taking by fraud. *See United States v. Allard*, 458 F.2d 1136 (3d Cir.), *cert. denied*, 409 U.S. 861, 93 S.Ct. 149, 34 L.Ed.2d 108 (1972) (defendant liable for scheme to defraud carried out through use of innocent third party).

Nevertheless, defendants' last contention defeats Shaw's claim. Defendants maintain that Shaw has not alleged interstate or foreign transportation of the goods as required by the statute. "Section 2314 requires, first, that the defendant have transported 'goods, wares, [or] merchandise' in interstate or foreign commerce; second, that those goods have a value of '$5,000 or more'; and, third, that the defendant 'kno[w] the same to have been stolen, converted, or taken by fraud.'" *Dowling v. United States*, 473 U.S. 207, 214, 105 S.Ct. 3127, 3131, 87 L.Ed.2d 152 (1985). Shaw's allegations in his complaint that defendants transported money and property deal only with the alleged interstate transportation of speculative profits, which this Court has already determined are not goods under Section 2314. Additionally, Shaw's complaint fails to allege interstate or foreign transportation by the defendants of the eight watches seized by Customs. Because the complaint contains no allegations that the watches were "transport[ed] in interstate or foreign commerce ..., knowing the same to have been ... taken by fraud," Shaw has failed to state a claim under Section 2314.

Shaw also attempts to state a claim under Section 2315. Section 2315 makes criminal the interstate receipt of stolen goods or money.[5] In his complaint, Shaw alleges that defendants knowingly and unlawfully received, stored, sold or disposed of money or property which would otherwise belong to Shaw. Complaint ¶ 75. Shaw has not alleged that defendants received any goods belonging to Shaw, nor could he, as defendants never had custody of the eight watches seized. As previously

---

5. Section 2315 provides in pertinent part:
   Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more ... which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken; ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

discussed, Shaw's speculative lost profits on the sale of eight watches are not an identifiable good received by defendants. Thus, Shaw has failed to allege a valid claim under sections 2314 and 2315 of the National Stolen Property Act.[6]

## CONCLUSION

For the foregoing reasons, defendants' motion requesting judgment on the pleadings is denied with respect to the RICO claims based on violations of the mail and wire fraud statutes and granted with respect to the RICO claims based on violations of the National Stolen Property Act.

SO ORDERED.

---

**6.** Because the Court finds that Shaw's claims do not meet the requirements of either Section 2314 or 2315, it is unnecessary to reach defendants' argument that Congress did not intend the National Stolen Property Act to apply to the wrongful obtaining of statutory trademark rights.