**BARR LABORATORIES, INC., Plaintiff,**

v.

**QUANTUM PHARMICS, INC., American Home Products Corp. and Jin–Shung Chang, Defendants.**

**No. CV–90–4406.**

United States District Court,
E.D. New York.

July 7, 1993.

---

Bruce L. Downey, Robert M. Rader, Winston & Strawn, Washington, DC, Anthony S. Genovese, David C. Burger, Robinson Brogg Leinwand Reich Genovese & Gluck, New York City, for plaintiff.

David R. Jewell, Richard J. DeMarco, Jr., Joseph J. Conklin, Donovan Leisure Newton & Irvine, New York City, for defendants Quantum Pharmics, Ltd. and American Home Products Corp.

William J. Ruane, American Home Products Corp., New York City, for American Home Products Corp.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Plaintiff commenced this action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); and asserted pendent state law claims of intentional interference with prospective economic advantage and unjust enrichment. Defendants' move to dismiss this action for failure to state a claim under Fed. R.Civ.P. 12(b)(6), or alternatively, for a transfer of venue pursuant to 28 U.S.C. § 1404(a). For the following reasons, defendants' motion to transfer venue is denied, and their motion to dismiss is granted.

## FACTS

Plaintiff Barr Laboratories, Inc. ("Barr") is a generic prescription drug manufacturer. The three defendants are Quantum Pharmics ("Quantum"), a competitor of Barr; American Home Products Corp., the parent corporation of Quantum; and Jin–Shung Chang, an employee, officer and agent of Quantum. Barr commenced this action after it discovered that Quantum had filed false applications with the Food and Drug Administration ("FDA") in order to obtain FDA approval to market certain generic drugs and then sold those drugs in the marketplace. The alleged misrepresentations were made to the FDA in "ANDA's," or "Abbreviated New Drug Applications," which all generic drug manufacturers are statutorily required to file before they may market generic drugs. The essential goals of an ANDA are to demonstrate to the FDA that the therapeutic properties of the generic drug are the "bioequivalent" of the brand-name drug (or innovator drug) it imitates, and that the generic drug will be produced according to certain manufacturing standards. Typically, the FDA bases its decision to approve or to disapprove an application on data and material submitted by the generic drug manufacturer. Many manufacturers may obtain approval to market the same generic drug, provided that each manufacturer submits an independent ANDA to the FDA. In this case, Quantum received approval to market its version of the generic drugs in question, marketed them, and thereafter approval was rescinded by the FDA after it determined that material submitted by Quantum was not accurate.

Arguing that it would have sold more of its generic drug products had Quantum's product not been available in the marketplace, Barr seeks to recover damages from Quantum and its corporate parent, American Home, for Quantum's alleged violations of the RICO statute, 18 U.S.C. § 1962(a), (b), and (c), based on predicate acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, when it submitted "materially false statements and deliberate omissions in bioequivalence data ... in its ANDA's for each of the drugs specified ... and ... [made] false claims in drug labels, advertisements, promotional literature and the like...." (Count I); for alleged violations of the Lanham Act, 15 U.S.C. § 1125(a), when Quantum affixed labels with false descriptions and representations of its generic drugs (Count II); and pendent state law claims of intentional interference with prospective economic advantage (Count III) and unjust enrichment (Count IV). Defendants Quantum and American Home[1] move for dismissal under Fed. R.Civ.P. 12(b)(6), and, alternatively, for a transfer of venue under 28 U.S.C. § 1404(a) to the District Court of Maryland because Quantum filed its ANDA's with the central FDA office, which is located in Maryland. For the following reasons, defendants' motion to transfer venue is denied and their motion to dismiss is granted.

## DISCUSSION

### I. Motion to Transfer Venue

■ Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The determination of whether to grant a motion to transfer is within the broad discretion of the trial court, *Red Bull Assocs. v. Best Western Int'l, Inc.,* 862 F.2d 963, 967 (2d Cir.1988); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), and the movant bears the burden of establishing the propriety of a § 1404(a) transfer. *Factors Etc.,* 579 F.2d at 218; *Leasing Serv. Corp. v. Patterson Enters.,* 633 F.Supp. 282, 284 (S.D.N.Y. 1986). In determining whether the movant

---

**1.** The individual defendant, Jin–Shung Chang has not appeared in this action. However, since Barr's claims are dismissed as against defendants Quantum and American Home, those claims are dismissed *sua sponte* as against defendant Chang. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 6 (2d Cir.1990)

(upholding *sua sponte* dismissal where grounds for dismissal against nonmovant were "substantially the same" as against the movants and where plaintiff was on notice of those grounds for dismissal). *See also Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988) (discussing *sua sponte* dismissals).

has met its burden, the district court should consider the following factors: (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining witnesses; (5) the relative ease of access to sources of proof; (6) where the events at issue took place; (7) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (8) the interests of justice in general. *Levitt v. State of Maryland Deposit Ins. Fund Corp.*, 643 F.Supp. 1485, 1492–93 (E.D.N.Y.1986). *See also Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 966–67 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809, *reh'g denied*, 451 U.S. 934, 101 S.Ct. 2012, 68 L.Ed.2d 321 (1981).

■ Based on these criteria, it is clear that defendants' motion for a transfer of venue to the District of Maryland must be denied. Both plaintiff Barr and defendant Quantum are New York corporations, and American Home is a Delaware corporation with its principal place of business in New York. Each of the parties will offer testimony of witnesses who are located in New York and they will produce documents located in New York.

■ Defendants contend, however, that the District of Maryland is a more convenient forum because the non-party witnesses are to be found in that district. Where a movant requests a venue transfer based upon the cost, convenience and availability of non-party witnesses, he must identify key witnesses to be called along with a general description of the substance of their testimony. *Factors Etc.*, 579 F.2d at 218; *Leasing Serv. Corp.*, 633 F.Supp. at 284. Here defendants assert that they will have to call FDA personnel to testify concerning the approval of Quantum's ANDA's and that documents in FDA files are relevant to their defense. Defs.' Reply Mem. of Law at 28. However, defendants do not dispute that Quantum employees will be called to testify regarding those alleged mis-

representations and that documents in Quantum's headquarters and in American Home's New York office are relevant to this action. *See* Mem. of Pl. Barr Labs. in Opp'n at 34–35 & n. 82. Since "[w]here the balance of convenience is in equipoise, plaintiff's choice of forum will control," *Leasing Serv.*, 633 F.Supp. at 285, this Court declines to transfer this action to Maryland because defendants have not demonstrated that the inconvenience to them in this forum outweighs the inconvenience to Barr were this action tried in Maryland.

Defendants' remaining arguments are not persuasive. Defendants contend that this action should be transferred to Maryland because that jurisdiction has an interest in adjudicating fraud perpetrated upon the FDA. Allegations that a defendant fraudulently obtained generic drug licenses and that it filed false and deceptive documentation with a federal agency, implicate the national, public interest, and not merely the local interest of the State of Maryland.[2] Defendants argue that this action will be tried sooner in the district court in Maryland than in the Eastern District of New York. This argument is similarly not persuasive. *See O'Brien v. Goldstar Technology, Inc.*, 812 F.Supp. 383, 385 (W.D.N.Y.1993) (court calendar congestion not dispositive).

## II. Motion to Dismiss

### A. *RICO count*

Defendants move to dismiss the RICO count under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. It is well settled that a court may only dismiss a complaint under Rule 12(b)(6), if after accepting the material facts alleged in the complaint as true, *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir. 1991) (citing *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964)), *cert. denied*, — U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992), it still appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

2. Defendants note that Barr itself opposed a motion to transfer venue from Maryland in another case on the ground that FDA personnel would be called to testify. However, as that case included allegations that FDA personnel accepted bribes from generic drug manufacturers, it is easily distinguishable from this action.

entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Since it is clear that Barr cannot show that its injury was caused by the alleged predicate acts of mail or wire fraud, the RICO count is dismissed.

■ Barr alleges that defendants Quantum and Chang committed two or more predicate acts of mail or wire fraud in violation of the RICO statute, 18 U.S.C. § 1962(a)–(c), by submitting false and deceptive ANDA's to the FDA with the intent to defraud the FDA in order to obtain licenses to market generic drugs. *See* Complaint ¶¶ 23–27. Barr now concedes, however, that such a scheme, by itself, would not give rise to a violation of the mail fraud or wire fraud statutes, 18 U.S.C. §§ 1341, 1343, because the FDA did not possess a property interest in the issued licenses. *See McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *Corcoran v. American Plan Corp.,* 886 F.2d 16 (2d Cir. 1989); *United States v. Evans,* 844 F.2d 36 (2d Cir.1988). *See also* Pl.'s Mem. of Law at 9–12.[3] Instead, Barr argues that it was deprived of money and property in the form of the lost business which it might have realized from sales of its generic drugs had Quantum not fraudulently obtained approval to market a competing product. Pl.s' Mem. of Law at 11 ("Barr's reduced market share and its loss of millions in profits constitutes the deprivation.").

■ In opposition, defendants claim that Barr cannot assert a RICO claim based on predicate racketeering acts of mail and wire fraud, where the FDA, and not Barr, was the defrauded party. The "convergence theory" in RICO jurisprudence requires that the plaintiff be both the defrauded party and the injured party in order to satisfy the proximate causation element of a RICO action. *Trautz v. Weisman,* 819 F.Supp. 282, 286 (S.D.N.Y.1993) (citing *Shaw v. Rolex Watch U.S.A., Inc.,* 726 F.Supp. 969, 972 (S.D.N.Y. 1989) (rejecting convergence theory)); *but see Lifschultz Fast Freight, Inc. v. Consolidated Freightways Corp.,* 805 F.Supp. 1277, 1294 (D.S.C.1992) (citing conflicting precedent and accepting convergence theory). However, this Court need not address the validity of the convergence theory, the applicability of which has not been definitively addressed by the Second Circuit, *see United States v. Eisen,* 974 F.2d 246, 253 & n. 2 (2d Cir.1992) (citing conflicting cases), *cert. denied,* — U.S. —, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993),[4] because even if Barr can support its RICO claim based on defendants' deception of the FDA, it still cannot show that those predicate racketeering acts were the proximate cause of its lost income.

■ The RICO statute provides that "any person injured in his business or property *by reason of a [RICO] violation*" may sue in federal court and may recover treble damages. 18 U.S.C. § 1964(c) (emphasis added). Thus, in order to maintain a RICO action, the plaintiff must demonstrate both "but for" causation and proximate causation with respect to the racketeering predicates. *Holmes v. Securities Investor Protection Corp.,* — U.S. —, —, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* In *Holmes,* the Court held that an insurance company could not maintain a civil RICO action against a defendant who defrauded its insured and its insured's customers. The Court imposed a "proximate cause" requirement in the civil RICO context

---

3. This Court notes that Congress legislatively repealed the *McNally* holding by enacting 18 U.S.C. § 1346, *see* Pub.L. 101–690, Title VII, § 7603(a), Nov. 18, 1988, 102 Stat. 4508. However, as that amendment does not apply retroactively to conduct occurring prior to its enactment, *United States v. Schwartz,* 924 F.2d 410, 418–19 (2d Cir.1991), it does not apply to this case.

4. Recently, in *Trautz v. Weisman,* 819 F.Supp. 282, 286 (S.D.N.Y.1993), the court upheld the RICO claim of a group of residents of an adult care facility who alleged that the owners of that facility filed deceptive papers with a state regulatory agency with the intent to obtain increased payments from the plaintiffs' government benefits. That court relied on *Shaw v. Rolex Watch U.S.A., Inc.,* 726 F.Supp. 969, 972 (S.D.N.Y.1989) in rejecting the "convergence theory" if the plaintiffs could otherwise show that their injury was proximately caused by the predicate racketeering acts.

because of the difficulty in ascertaining the extent of injuries ·sustained by plaintiffs who were not direct victims of the racketeering acts; the difficulty· in apportioning damages among all plaintiffs who have been indirectly injured in order to avoid multiple recoveries; and because "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.*

It ·is clear that the reasoning of *Holmes* applies with· equal force to this action. The alleged racketeering predicates were not the proximate cause of Barr's injury. Barr's alleged injury is speculative at best. Its alleged losses do not stem from the allegedly false ANDA's filed with the FDA. Those losses depend on the intervening actions of the FDA and .Quantum's customers. The FDA had discretion in deciding whether or not to issue the licenses to Quantum. In turn, Quantum's customers could choose to purchase Quantum's products or to purchase any other manufacturer's generic drugs. *See Israel Travel Advisory Serv. Inc. v. Israel Identity Tours, Inc.*, No. 92–C–2379, 1993 WL 155503, at *3 (N.D.Ill. May 10, 1993) (dismissing RICO claim under *Holmes* where alleged injury occurred by virtue of intervening decision of customers to purchase defendant's product based ,on false advertising); *Lifschultz Fast Freight, Inc. v. Consolidated· Freightways Corp. of Delaware*, 805 F.Supp. 1277, 1281–82, 1291 (D.S.C.1992) (rejecting plaintiff's RICO claim for lost profits based

on alleged price-setting conspiracy under *Holmes* because "[a]ny harm from the alleged conspiracy would be purely contingent on how the rate bureaus and the ICC [Interstate Commerce Commission] acted based on the alleged predicate acts and then the customers taking action based on the ICC action."). In fact, it is equally probable that Quantum's customers would have purchased a generic drug produced by one of Barr's competitors, rather than Barr's product. Were this Court to uphold Barr's RICO claim the trier of fact would be required to speculate as to the number of Quantum's customers who would have purchased Barr's products, rather than the generic drugs produced by other manufacturers, had Quantum's products not been sold in the marketplace. Furthermore, the court would be required to anticipate all potential plaintiffs who sustained indirect injuries in order to prevent multiple recoveries.[5] In short, Barr's claim is .the paradigm of an indirect claim "which would open the door to 'massive and complex damages litigation[,] not only burden[ing] the courts, but also undermin[ing] the effectiveness of treble-damages suits," *Associated General Contractors of California, Inc. v. Carpenters*, 459 U.S. 519, 545, 103 S.Ct. 897, 912, 74 L.Ed.2d 723 (1983) (*quoted in Holmes*, —— U.S. at ——, 112 S.Ct. at 1321), and which must, accordingly, be dismissed.[6]

### B. *The Lanham Act Claim*

Barr alleges that defendants violated § 43(a) of the Lanham Act, 15 U.S.C. 1125(a) [7] by falsely advertising that Quan-

---

**5.** The fact that there may not be any direct victim who can commence a RICO action in this case, as there was in *Holmes*, —— U.S. at ——– —— & n. 21, 112 S.Ct. at 1320–21 & n. 21, does not justify allowing an indirect plaintiff, such as Barr to commence a RICO action to recover lost profits predicated on a tenuous causal relationship to the alleged racketeering acts.

**6.** Because plaintiff's RICO claim is dismissed on causation grounds, this Court need not address defendants' alternative argument that the pleading is otherwise deficient for failing to comply with the particularity requirement of Fed. R.Civ.P. 9(b). *See, e.g., Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–50 (2d Cir. 1987) (pleading containing RICO claim based on

predicate acts of mail and wire fraud must comply with Rule 9(b)), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 228 (S.D.N.Y.1992) (same).

**7.** Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a)(1) provides: .

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

tum's generic drugs were the bioequivalent of, and contained similar therapeutic benefits as, the innovator drug and the generic drugs of other manufacturers, including Barr's products. It is beyond cavil that "[f]alse advertising [under the Lanham Act] clearly encompasses fraudulent representations that goods marketed have 'ingredients or qualities' that they, in fact, do not have but that the goods of a competitor do have." *PPX Enters., Inc. v. Audiofidelity Enters., Inc.,* 818 F.2d 266, 272 (citations omitted). To state a claim for false advertising under the Lanham Act, Barr must show the following five elements:

(1) [Quantum] made false statements of fact about its own products or [Barr's] products in its advertisements [or labels];

(2) Those advertisements [or labels] actually deceived or ha[d] the tendency to deceive a substantial segment of their audience;

(3) Such deception is material because it is likely to influence the buying decisions;

(4) [Quantum] caused its falsely advertised [or falsely labelled] goods to enter interstate commerce; and

(5) [Barr] has been or is likely to be injured as a result of those activities either by direct diversion of sales from itself to [Quantum] or by injury to the goodwill its products enjoy with the buying public.

*Multi-Tech Sys., Inc. v. Hayes Microcomputer Prods., Inc.,* 800 F.Supp. 825, 845 (D.Minn.1992), *appeal dismissed,* 988 F.2d 130 (Fed.Cir.1993) (citing *Alpo Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 963–64 (D.C.Cir.1990) and *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.,* 911 F.2d 242, 244 (9th Cir.1990)).

■ It is noted that Barr seeks $3.5 million in compensatory damages for the alleged Lanham Act violation. Complaint ¶ 36. In order to recover damages for "false advertising" under the Lanham Act, a plaintiff must show (1) that some consumers were actually confused by the defendant's false advertising *or* that the defendant deliberately or intentionally advertised its product falsely, which would pretermit a showing of actual consumer confusion, *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 139–40 (2d Cir.1991) (citing *PPX Enters.,* 818 F.2d at 271–72)), and (2) that the plaintiff's injury was caused by the defendant's false advertising, *Burndy Corp. v. Teledyne Indus., Inc.,* 748 F.2d 767, 771 (2d Cir.1984). At this juncture, this Court cannot determine that Barr will be unable to demonstrate, under any set of facts, that it lost potential profits or sales or that its goodwill was injured by virtue of defendants' alleged false advertising and deceptive conduct.

■ Defendants contend that the complaint does not specify the alleged misrepresentations in Quantum's product label that would give rise to a Lanham Act violation. *See* Defs.' Mem. of Law at 27–30; Defs.' Reply Mem. of Law at 19–21. While it is unclear whether Fed.R.Civ.P. 9(b), which mandates that a plaintiff plead allegations of fraud with particularity, is applicable to a Lanham Act claim, *compare Textile Deliveries, Inc. v. Stagno,* No. 90–Civ.–2020, 1990 WL 155709, *6, 1990 U.S.Dist. LEXIS 13309, at *17–19 (S.D.N.Y. Oct. 9, 1990) (applying Rule 9(b) to Lanham Act claim under 15 U.S.C. § 1125(a)); *Oreck Corp. v. Thomson Consumer Elecs., Inc.,* 796 F.Supp. 1152, 1159 (S.D.Ind.1992) (applying Rule 9(b) to trademark registration fraud claim 15 U.S.C. § 1115(b)) *with Totaltape, Inc. v. National Ass'n of State Bds. of Accountancy,* No. 85–Civ.–4241, 1987 WL 7736, at *7 (S.D.N.Y. March 4, 1987) (noting that Rule 9(b) may not apply to Lanham Act claim under 15 U.S.C. § 1125(a)); *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F.Supp. 1549, 1556 (E.D.Pa.1985) (even if Rule 9(b) does not

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

apply to Lanham Act claim under 15 U.S.C. § 1125(a), plaintiff should plead nature of alleged misrepresentations with particularity), this Court believes that defendants should be afforded proper notice of the alleged misrepresentations in the product labels affixed to Quantum's generic drug containers and in defendants' promotional literature. Thus, even if Rule 9(b) is not applicable, Barr is required to state generally the content of the alleged misrepresentations. *Cf. Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1288 (S.D.N.Y.1988) (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986) (to comply with Rule 9(b), a plaintiff must generally state the time, place, speaker, and content of the alleged misrepresentation)). In this case, the complaint falls far short of meeting that requirement and fails to place defendants on notice of their alleged wrongdoing.

In the complaint, plaintiff broadly alleges that "Quantum intentionally affixed, applied, annexed or used ... labels constituting false descriptions and representations of the physical character, quality, nature and therapeutic value of [the generic] drugs [listed in paragraph 14 of the Complaint]," [8] Complaint ¶ 34, and that "Quantum ... devised and used ... various letters, brochures, promotional information, advertising and the like which similarly constituted false descriptions and representations of the physical character, quality, nature and therapeutic value of such generic drugs." Complaint ¶ 35.

These allegations do not specify what falsehoods or misrepresentations, if any, were contained in the product labels or in the promotional literature. Such broad and conclusory allegations do not place defendants on notice of the wrong that they are accused of committing. Plaintiff has not pleaded any facts demonstrating that Quantum's generic drugs did not contain the active ingredients of the innovator drug as represented. Nor has plaintiff asserted any facts demonstrating that Quantum included false bioequivalence data in the ANDA's that were submitted to the FDA. This Court notes that the

FDA simply revoked approval of Quantum's products when it found "substantial deficiencies in Quantum's manufacturing practices and [in] the procedures it used to establish bioequivalence for its approved ANDA's." Complaint ¶ 16. That agency also found that "untrue statements, discrepancies, and omissions exist concerning the production and testing of lots used to support approval of the [Quantum] applications" which raised questions concerning the reliability of the data submitted by Quantum. Complaint ¶ 17. However, neither the FDA, nor plaintiff, nor any other individual or entity has yet to discover that the drugs were not the bioequivalent of the respective innovator drugs as represented by Quantum. Therefore, the Lanham Act claim is dismissed without prejudice and plaintiff shall have thirty days from the date of this order to replead that claim.

### C. *Pendent State Law Claims*

Barr also asserts state law claims for interference with prospective economic advantage and unjust enrichment under this Court's pendent jurisdiction. Since Barr has pleaded a facially meritorious claim under the Lanham Act, but is only required to replead that claim with greater specificity, this Court exercises supplemental jurisdiction over the pendent state law claims under 28 U.S.C. 1367, and dismisses both claims on the merits.

The interference with prospective economic advantage claim is fatally flawed in two respects. First, in order to recover under that tort theory, the plaintiff must demonstrate "the defendant[s'] interference with business relations *existing between the plaintiff and a third party, either* with the sole purpose of harming the plaintiff *or* by means that are 'dishonest, unfair or in any other way improper.'" *PPX Enters., Inc. v. Audiofidelity Enters., Inc.,* 818 F.2d 266, 269 (2d Cir.1987) (citations omitted) (emphasis added in part). "If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will

---

**8.** Paragraph 14 of the Complaint lists 12 generic drugs which the FDA approved based on ANDA's submitted by Quantum.

fail unless the means employed include criminal or fraudulent conduct.". *Id.* (citing *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.*, 614 F.2d 832, 838 (2d Cir.1980)). In addition, interference with a plaintiff's business relations with a third party can be found if the plaintiff had a "reasonable expectancy of a contract with the third party, which can result from mere negotiations." *Strapex Corp. v. Metaverpa N.V.*, 607 F.Supp. 1047 (S.D.N.Y.1985).

Here, Barr seeks to recover the potential profits which it might have earned had Quantum not wrongfully obtained approval to market a competing product. However, Barr does not contend that it had an "existing relationship" with any of Quantum's customers. Nor can Barr justifiably claim that it had a "reasonable expectancy" to enter into a contract with those purchasers since various drug manufacturers produce the same generic drug for sale to the public.

Moreover, in *PPX Enters.*, the court rejected the plaintiff's tortious interference with prospective economic advantage claim because the defendants did not interfere with the underlying business relationship between the plaintiff and a third party. Instead, defendants in *PPX Enters.*, as in this case, only sought to reap for their own benefit a portion of the anticipated profits from the sale of records containing songs by Jimi Hendrix. 818 F.2d at 270. The Second Circuit held that such conduct did not give rise to a cause of action for interference with prospective business advantage. The reasoning of *PPX Enters.* applies with equal force to this case. Consequently, Barr cannot recover the profits that it may have realized had Quantum's product not been on the marketplace because the defendants did not interfere with Barr's ability to market its own product, and Barr has not alleged that they interfered directly with a business relationship between it and a third party (e.g., a customer). *See also Ciccolo v. Chicago Research and Trading Group Ltd.*, 161 A.D.2d 364, 364, 555 N.Y.S.2d 318, 319 (1st Dep't 1990) (dismissing plaintiff's tortious interference with business relations claim because defendants' alleged wrongful conduct in filing misleading application with the Federal Reserve Bank did not interfere "with any identifiable business relationship then existing between plaintiff and a third party").

Similarly, the equitable claim of unjust enrichment must be dismissed as well. Under New York law, an unjust enrichment claim will only lie if the plaintiff can show that (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant to make restitution. *Dolmetta v. Unitah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir.1983); *Hutton v. Klabal*, 726 F.Supp. 67, 72 (S.D.N.Y.1989). The requirement that the enrichment must come at plaintiff's expense derives from the fact that:

> "[T]he law is adamant. Enrichment alone will not suffice to invoke the remedial powers of a court of equity. Critical is that under the circumstances and *as between the two parties to the transaction* the enrichment be unjust."

*McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 605, 363 N.E.2d 328, 330 (1977) (emphasis added). *See also Baratta v. Kozlowski*, 94 A.D.2d 454, 464, 464 N.Y.S.2d 803, 810 (2d Dep't 1983); *Naimoli v. Massa*, 81 Misc.2d 431, 434, 366 N.Y.S.2d 573, 577 (N.Y.City Ct.1975) ("The general rule [of an unjust enrichment claim] is that *where a person has received a benefit from another* he is liable to pay only ... if the circumstances of [the] receipt or retention [of the benefit] are such that, *that between two persons, it is unjust for him to retain it.*") (emphasis added).

Here, Barr claims that defendants Quantum and American Home have been enriched through profits earned on sales of generic drugs that were approved by the FDA based upon false and deceptive ANDA's; that those sales were at Barr's expense because Barr could have earned those profits had Quantum not wrongfully obtained FDA approval for its generic drugs; and that equity and good conscience demand that defendants remit some or all of those profits to Barr. Complaint ¶¶ 42–44. However, even after accepting the allegations of the complaint as true, as we must for purposes of this motion to dismiss, Barr has failed to plead an unjust

**120**

enrichment claim. Barr has not demonstrated—nor could it under any set of facts demonstrate—that defendants' benefit was realized at its expense. Quantum did not take any property from Barr, nor did it affirmatively wrest potential sales from Barr. The injury sustained by Barr was a general injury that was likewise sustained by every other manufacturer of the generic drugs in issue. If anything, Quantum injured the customers who purchased the withdrawn generic medication, not the competing drug manufacturers. *See Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 797 F.2d 70, 79 (2d Cir. 1986) (plaintiff's licensees, and not plaintiff, were injured parties of defendant's alleged tortious conduct and it was those licensees who may bring an action for unjust enrichment), *aff'g,* 615 F.Supp. 838, 855–56 (S.D.N.Y.1985) (rejecting theory that plaintiff can recover monies unjustly received by defendant from a third party), *cert. denied,* 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986). Accordingly, Barr's unjust enrichment claim must be dismissed.

CONCLUSION

For the foregoing reasons, defendants' motion to transfer venue is denied; the RICO claim and the pendent state law claims of interference with prospective economic advantage and of unjust enrichment are dismissed with prejudice as to all defendants; and the Lanham Act claim is dismissed without prejudice. Plaintiff shall have thirty days from the date of this order in which to file an amended pleading containing a Lanham Act claim.

SO ORDERED.